Yusuf Asad MADYUN et al., Plaintiffs,

v.

James R. THOMPSON, Governor et al., Defendants.

No. 79–1083.

United States District Court, C. D. Illinois.

Feb. 22, 1980.

**620**

Yusuf Asad Madyun et al., pro se.

David Cassorla, Asst. Atty. Gen., Kathleen M. Lien, Asst. Atty. Gen., Sp. Litigation Division, Chicago, Ill., for defendants.

### DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

In this action, declaratory and injunctive relief are sought with respect to certain conditions and procedures at the Pontiac Correctional Center (Pontiac), Pontiac, Illinois. Plaintiffs, five current inmates who are proceeding pro se, allege that these conditions and procedures violate their rights under 42 U.S.C. § 1983, alleging jurisdiction under 28 U.S.C. § 1343(3). Defendants are State officials with varying responsibility for the administration of Pontiac. Portions of plaintiffs' complaint were dismissed by this court's order of August 2, 1979. The remaining allegations concern inmate mail privileges, the segregation disciplinary procedure, and the overcrowded facilities.

### I.

With respect to all remaining issues in this action, all defendants have moved for summary judgment pursuant to Rule 56, F.R.Civ.P. Defendants' motion was filed on August 20, 1979, and on August 28, 1979, plaintiffs were notified that they had until October 22, 1979, to respond to the motion. As plaintiffs unsuccessfully attempted to appeal the August 2 order of this court, the time in which to oppose the motion was extended until January 29, 1980. Despite notice to the plaintiffs, they have filed nothing in opposition to defendants' motion.

Rule 56(e), F.R.Civ.P., provides that a party opposing a motion for summary judgment may not rest upon the mere allegations of his pleading, but must respond by setting forth specific facts showing that there is a genuine issue for trial. The straightforward application of this rule would dictate that summary judgment be granted in this case.

However, some courts have tempered the literal application of procedural rules in cases involving pro se prisoners. In order to insure fair and meaningful consideration of the pro se claims of prisoners, courts have been cautious in resolving their cases through summary judgment. *LaBatt v. Twomey*, 513 F.2d 641, 650 (7th Cir. 1975); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978); *Hudson v. Hardy*, 134 U.S.App. D.C. 44, 412 F.2d 1091 (D.C.Cir.1968). This caution has not resulted in a per se rule that automatically forecloses summary judgment against a pro se prisoner. The courts examine the circumstances of each case in order to determine whether the claims have received fair and meaningful consideration. Factors considered in making this determination are the prisoner's access to proof, his understanding of the legal issues involved, his ability to express himself, and the nature of his claim. A thorough examination of these factors in our case indicates that consideration by way of summary judgment is appropriate.

Plaintiffs' claims do not involve facts on the "outside" to which they have no access; rather, they involve events which allegedly occur within the prison and directly involve the inmates. The general nature of the allegations in the complaint and the fact that only supervisory personnel are joined as defendants indicate that plaintiffs are not relying on specific factual incidents about which there could be conflicting testimony. Consequently, this is not a case where a trial with cross-examination and demeanor evaluations would be necessary to determine the credibility of contradictory witnesses. Summary judgment is generally inappropriate on issues of intent and motive

or on exceedingly complex issues, none of which are involved in this case.

In some circumstances, a pro se plaintiff may be unaware of his obligation to go beyond his complaint in order to oppose a motion for summary judgment. It is for the benefit of such a legal novice that the courts are hesitant to technically apply procedural rules. From the drafting and makeup of the complaint, it is apparent that these plaintiffs are aware of the legal issues and procedures. The original complaint was verified by one of the plaintiffs, plaintiffs have filed affidavits in support of their motions, and they have appealed orders of this court. In their motions plaintiffs have demonstrated a knowledge of the Federal Rules of Civil Procedure and have relied thereon to support their positions. In addition, plaintiffs were notified of the time limits in which they had to respond to defendants' motion for summary judgment. The plaintiffs in our case cannot be classified as unsophisticated pro se prisoners who have no knowledge of the legal system.

## II.

### A

■ Subparagraphs E(v.–vii.) of paragraph 12 of the complaint make allegations concerning the handling of inmate mail. The specific complaints are that privileged legal mail is censored and indiscriminately opened outside the presence of the inmate, and that personal mail is delayed, lost, or damaged. Plaintiffs have alleged no specific factual incidents. Construing these allegations liberally, as *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), required on a motion to dismiss a pro se prisoner complaint, they may be interpreted as either alleging that the prison procedure is improper or that on occasion the prison employees do not follow the official prison policy. Under either interpretation, defendants are entitled to summary judgment.

Illinois Department of Corrections Administrative Regulation 823, attached to defendants' motion, outlines the procedures with respect to inmate mail privileges. The regulation concerning privileged legal mail forbids censorship and provides for the opening of this mail in the presence of the inmate. The regulations also require the prompt handling of all mail, with distribution within twenty-four hours after its examination for contraband. Only mail containing contraband is held up by the prison authorities. In addition, all inmate complaints concerning mail privileges are to be resolved in an expeditious manner. These procedures, established by the administrative regulations, clearly meet the appropriate constitutional standards. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Bach v. Illinois*, 504 F.2d 1100 (7th Cir. 1974); *Adams v. Carlson*, 488 F.2d 619 (7th Cir. 1973).

Marion E. Larson, the Mail Office Supervisor at Pontiac, states in his affidavit that incoming inmate mail is processed in accordance with the applicable administrative regulations. Major Louis O. Lowery, Chief of Security at Pontiac, states in his affidavit that privileged inmate mail is handled in accordance with the official procedure established by the administrative regulations and that all officers are instructed as to this procedure and follow it.

### B

Subparagraph M(i) of paragraph 12 of the complaint alleges that inmates are placed in segregation without the benefit of a hearing. In *Wolff, supra*, the Supreme Court outlined the requirements due process imposes on prison disciplinary proceedings, and expressly noted, 418 U.S. 571 n. 19, 94 S.Ct. 2982, that the outlined procedure applied to the imposition of solitary confinement. Implicit in the *Wolff* procedure is a requirement for a hearing. In his affidavit, J. W. Fairman, the current warden at Pontiac, presents the procedures for placing an inmate in segregation. This procedure, which Warden Fairman states is followed, clearly includes a hearing for the inmate before he is placed in segregation. This hearing is sufficient under the requirements established in *Wolff*. Contrary to

the unsupported statement in the complaint, it appears without doubt that inmates are afforded a disciplinary hearing before being placed in segregation, and there are no genuine issues remaining for trial on this allegation.

### C

Subparagraph N of paragraph 12 of the complaint concerns the safety of inmates in light of the allegedly overcrowded and understaffed facilities at Pontiac. The essence of these allegations is that there are insufficient guards on patrol to prevent confrontations among inmates. Plaintiffs' allegations in this regard are of a general nature, without any recitation of specific factual incidents. These allegations of overcrowding at Pontiac are not new to this court. Similar allegations concerning the prison population at Pontiac were made in *Stansbury v. Illinois*, No. 78–1051 through 78–1072 (consolidated) (C.D.Ill.1978). In resolution of the claims in *Stansbury*, this court entered a consent decree in which limitations were placed upon the assignment of prisoners and on the total population at Pontiac. Pursuant to the decree, this court has continued to monitor conditions at Pontiac and has appointed an independent organization to periodically inspect the facilities and report directly to the court on compliance. The consent decree was agreed to and entered on September 29, 1978, subsequent to the initial filing of the complaint in this case. Defendants have presented the affidavit of Ron Ashby, Assistant Warden of Programs at Pontiac, who states that the population and assignment requirements of the *Stansbury* decree are followed.

■■ To the extent that the allegations of this subparagraph raise issues beyond the scope of the *Stansbury* decree, they concern the internal operations of the prison, which are, absent exceptional circumstances, left to the discretion of the State. *U. S. ex rel. Miller v. Twomey*, 479 F.2d 701 (7th Cir. 1973); *U. S. v. Ragen*, 337 F.2d 425 (7th Cir. 1964); *Inmates of Attica v. Rockefeller*, 453 F.2d 12 (2d Cir. 1971). The number of guards on patrol at a particular time and the selection of cellmates are internal matters of security into which federal courts should intervene only when exceptional circumstances are involved. Such exceptional circumstances do arise when federal constitutional rights are violated. In order to establish a violation of the Eighth Amendment, plaintiffs must either show that the actions of the defendant intentionally inflicted excessive or grossly severe punishment upon them or that conditions so harsh as to shock the general conscience were knowingly maintained. *LaBatt v. Twomey*, 513 F.2d 641, 648 (7th Cir. 1975). The allegations in this subparagraph, construed liberally, do not establish conditions which would constitute such cruel and unusual punishment. Consequently, the allegations concerning overcrowding have been resolved by the *Stansbury* decree or involve matters left to the discretion of the State.

### III.

The critical determination that this court has made with respect to the issues raised in the complaint is whether genuine issues of fact remain for trial. Based on all of the pleadings of both parties, and particularly the affidavits presented by defendants, it clearly appears that no genuine issues of fact remain. This court has thoroughly examined plaintiffs' claims and construed the evidence in plaintiffs' favor. Following extensive consideration of the allegations in this manner, there is no doubt but that defendants are entitled to summary judgment on all remaining issues.

Accordingly, IT IS ORDERED that defendants' motion for summary judgment is GRANTED as to all remaining claims, and judgment is entered herein in favor of defendants.