Yusuf Asad MADYUN, et al.,
Plaintiffs-Appellants,

v.

James R. THOMPSON, Governor, et al.,
Defendants-Appellees.

No. 80–1419.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1981.

Decided Aug. 6, 1981.

Donna Helen Triptow, Jenner & Block, Chicago, Ill., for plaintiffs-appellants.

Imelda R. Terrazino, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, SPRECHER and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiffs are Illinois prisoners who brought this class action for injunctive relief challenging various conditions at Pontiac State Prison. The suit was filed in 1977. The district court denied plaintiffs' motion to proceed in forma pauperis because the complaint was "frivolous". The district court did not pass on plaintiffs' motion for leave to appeal in forma pauperis. This court remanded the action and directed the district court to rule on plaintiffs' request for an indigent appeal.

The district court then granted plaintiffs' request to appeal in forma pauperis. On appeal, this court reversed from the bench the district court's denial of plaintiffs' original motion to file in forma pauperis and ordered that plaintiffs' action be allowed to proceed in the district court. *Hammonds v. Thompson*, No. 78–2153, Unpublished Order (7th Cir. April 12, 1979). The order specifically cited several of the allegations of the complaint as "clearly not frivolous."

Following this court's remand, the district court proceeded to rule on plaintiffs' claims. An unpublished order of August 2, 1979, dismissed two groups of allegations,

one group for mootness and the second group for failure to state a claim under Rule 12(b)(6). A third group of allegations was disposed of on summary judgment under what appears to be a collateral estoppel theory. The district court disposed of the final portion of the complaint in a published order, *Madyun v. Thompson*, 484 F.Supp. 619 (C.D.Ill.1980), by a combination of summary judgment and dismissal for failure to state a claim. All of the claims were eventually resolved adversely to plaintiffs and this appeal followed. We shall consider the disposition of each group of allegations separately.

## I. *Collateral Estoppel*

■ The district court ruled that one set of allegations[1] duplicated questions resolved by a remedial order in *Preston v. Thompson*, No. 78–C–3512, pending at that time in the Northern District of Illinois. Accordingly, the district court granted judgment for the defendants on those allegations because the order in *Preston*, known as the "Pontiac Plan," amounted to an "adjudication" that conditions under the Plan are not violative of the Constitution. Because plaintiffs did not allege or offer evidence that conditions were other than as the Plan described, the court granted summary judgment[2] as to the above-noted matters supposedly common to both actions.

There are several flaws in this approach. First, the Pontiac Plan did not purport to mandate compliance with the Constitution. Rather, the Pontiac Plan attempted to restore conditions at the prison to those existing prior to the devastating riots of July 22, 1978. Nowhere in the Pontiac Plan is there any mention of the Constitution, nor' is there any attempt to evaluate the constitutional dimensions of the rights asserted in the *Preston* litigation.

Second, the purported duplication between the claims resolved in *Preston* and those in the instant case is not nearly as complete as indicated by the district court. The general sort of kinship inherent in concerns respectively addressed to similar broad issues of prison management is not nearly close enough to have somehow adjudicated plaintiffs' challenges in the instant case.

■ Finally, and most importantly, every litigant is entitled to his or her day in court. The kind of issue preclusion applied by the district court in the instant case, normally described as collateral estoppel, is reserved for circumstances where a party to the present litigation has had a "full and fair opportunity" to litigate the issue in the prior proceeding. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). The record in this case is silent as to who the parties to the *Preston* litigation are. Certainly, there is no showing that the plaintiffs in the instant case were represented or participated in *Preston*. Overall we think there is no basis for collateral estoppel. We therefore reverse the district court's grant of summary judgment as to the allegations listed in footnote 1 of this opinion.[3]

## II. *Mootness*

■ The district court dismissed another group of allegations[4] as moot because they purportedly duplicated subjects encompassed in the consent decree in *Stansbury v. Pinkney*, Nos. 78–1051 through 78–1072 (C.D.Ill.1979) (consolidated), a separate suit before Judge Morgan also challenging pris-

---

1. Paragraphs 12D, 12H, 12I, 12J, 12P, 12R and 12S of the complaint.

2. At the conclusion of its order, the district court indicated that all of the allegations addressed by its order were dismissed. When dealing specifically with the impact of the *Preston* litigation, however, the district court stated that it was granting "summary judgment as to matters common to this action and *Preston*." Appellants' Appendix at 93.

3. The district court's use of summary judgment to dispose of these allegations also suffers from the same problem that we perceive with respect to the published summary judgment order. *See* Part IV, *infra*.

4. Paragraphs 12A, 12B, 12G and 12Q of the complaint.

on conditions at Pontiac. Allegations are moot when a plaintiff "has already been made whole for damage it claims to have suffered...." *Arizona Electric Power Cooperative, Inc. v. Federal Energy Regulatory Commission*, 631 F.2d 802, 808 (D.C.Cir. 1980). In the instant case, this definition of mootness would suggest an apparent belief by the district court that the *Stansbury* consent decree had already granted plaintiffs the relief that they seek in the pertinent allegations of their complaint.

■■ A comparison of these allegations and the *Stansbury* consent decree reveals that the identity of content relied upon by the district court is simply not present. In the absence of a high degree of duplication, plaintiffs' claims cannot be moot because those claims seek relief beyond that granted in *Stansbury*. *See Wiley v. NCAA*, 612 F.2d 473, 476 (10th Cir. 1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2168, 64 L.Ed.2d 798 (1980). For example, the *Stansbury* consent decree forbids prison officials from placing more than two inmates in a cell. The complaint in the instant case challenges the practice of putting even two inmates in a given cell.[5] Complaint, ¶ 12A.

Plaintiffs also challenge the adequacy of the food service at Pontiac on numerous grounds. Complaint, ¶ 12B. The allegations focus on the quantity of food, unsanitary conditions, disparities among the food offerings to various cellhouses and inadequate substitutes for pork entrees for inmates unable to eat pork because of their religious beliefs. The *Stansbury* decree, on the other hand, addresses the food service in only the most general fashion by providing for semi-annual inspections by the Illinois Department of Health and an inspector appointed by the court. While such inspections could reasonably aid in the factual investigation of plaintiffs' allegations they would not necessarily address the very specific concerns raised by the complaint.

■ Paragraph 12G raises numerous issues with regard to the availability and quality of medical care at Pontiac. Deliberate indifference to the medical needs of an inmate can constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The supposedly duplicative provision of the *Stansbury* decree merely provides that at least one medically trained staff-person, not necessarily a doctor, be on duty at the prison at all times with access to adequate medical supplies. Nothing in the *Stansbury* decree even relates to the availability of adequate dental care. Compliance with the *Stansbury* decree would clearly not address the more extensive specific allegations present in the instant case.

Finally, paragraph 12Q asserts constitutional violations based upon the widespread presence of communicable and infectious diseases such as hepatitis and tuberculosis. The complaint seeks a physical examination for every inmate and a quarantine to prevent the further spread of communicable diseases. None of these concerns are addressed by the much more limited relief obtained in the *Stansbury* decree and described in the preceding paragraph.

Paragraph 12C of the complaint was dismissed on mootness grounds unrelated to the *Stansbury* decree. This paragraph alleges that Pontiac's laundry facilities are constitutionally inadequate. The district court found that these allegations were mooted because the Pontiac laundry facilities were destroyed during the 1978 riot. Prisoner laundry is now sent to the Joliet and Sheridan Correctional Centers. We agree that plaintiffs' claims are now moot with respect to the Pontiac facilities (since mootness flows from the destruction of the

---

5. The constitutionality of double-celling involves an assessment of many factors, including, *inter alia*, the duration of the confinement, the size of the cells and the opportunities for inmates to leave their cells during the normal prison routine. *See Bell v. Wolfish*, 441 U.S. 520, 541, 99 S.Ct. 1861, 1875, 60 L.Ed.2d 447 (1979); *Lock v. Jenkins*, 641 F.2d 488, 492–95 (7th Cir. 1981). On remand, the district court should assess whether the totality of the other conditions of confinement at Pontiac combine with the double-celling to constitute a violation of the Eighth Amendment. *See Rhodes v. Chapman*, —— U.S. ——, —————, 101 S.Ct. 2392, 2398–2400, 69 L.Ed.2d 59 (1981).

subject matter). But we specifically leave open the possibility of an amendment to the complaint challenging the present laundry system if, in fact, that system is believed to be inadequate.

### III. *Failure to State a Claim*

A third group of allegations[6] were dismissed for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). Paragraphs 12E(i) and 12E(ii) concern deprivations of personal property by delays in the prison administrative system. Paragraph 12E(iii) alleges similar deprivations of personal property caused by negligent recordkeeping. Not all negligent deprivations of personal property constitute a violation of due process. *Parratt v. Taylor*, —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Under *Parratt*, negligent deprivations for which prisoners may be compensated by state tort claim procedures do not violate federal due process guarantees. *Parratt*, at —— – ——, 101 S.Ct. at 1914–16. The record in the instant case is insufficient to resolve the questions raised by *Parratt*. We therefore vacate the portion of the district court's order dismissing paragraphs 12E(i), 12E(ii) and 12E(iii) and remand for further consideration in light of *Parratt*.[7]

Paragraph 12E(iv) alleges that defendant Pinkney intentionally cut in half the federal stipends given prisoners for certain work assignments. Under the liberal *pro se* pleading standards of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we find that this allegation states a claim based upon an intentional taking of plaintiffs' property. *See Kimbrough v. O'Neil*, 545 F.2d 1059, 1061 (7th Cir. 1976) (*en banc*). It may well be that defendant Pickney had a legitimate reason for his action, but the matter must properly wait, at the least, for resolution by way of summary judgment.

Paragraph 12F concerns the grievance procedure at the prison for the consideration of prisoner complaints. Paragraph 12F alleges, *inter alia*, that certain categories of grievances are automatically denied without any consideration as to their merit. For example, the complaint alleges that all grievances that charge the harassment of inmates by corrections officers are routinely denied. "State granted liberty or property rights of prison inmates are entitled to protection under the Due Process Clause against arbitrary state abrogation." *Harris v. Jacobs*, 621 F.2d 341, 342 (9th Cir. 1980) (per curiam); *Connecticut Board of Pardons v. Dumschat*, —— U.S. ——, ——, 101 S.Ct. 2460, 2463, 69 L.Ed.2d 158 (1981). In order to state a claim under the due process clause, the grievance procedure must create a liberty interest sufficient for due process protection. Such a liberty interest must be based upon a "legitimate claim of entitlement"[8] to the grievance process. Such an entitlement can be founded upon state statutes, prison rules or regulations or established prison customs. *Arsberry v. Sielaff*, 586 F.2d 37, 47 (7th Cir. 1978). The record in the instant case is devoid, however, of any reference to the source of the grievance procedure. The *pro se* complaint merely states that the procedure is the result of "court litigation." Without more, we are unable to fully evaluate these allegations. Because a remand is necessary for other allegations of the complaint, we shall vacate this portion of the district court order and remand for further consideration rather than uphold the dismissal for failure to state a claim.

A somewhat separate claim also contained in Paragraph 12F involves the arbitrary denial of any complaint addressed

---

**6.** Paragraphs 12E(i), 12E(ii), 12E(iii), 12E(iv), 12F, 12K, 12L, 12M(ii), 12M(iii), 12M(iv), 12M(v), 12N and 12–O.

**7.** This case differs from *Parratt* in that in the instant case there is no claim of money damages. As we interpret *Parratt*, however, this distinction does not go to the presence of a

constitutional violation but merely to the appropriateness of a given remedy.

**8.** *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

to racially motivated misuse of authority. Allegations of racial discrimination are not dependent upon a finding of a liberty interest in the state program at issue. We believe that this allegation states a claim under the equal protection clause, which requires that the state not utilize racial classifications without a compelling state interest, even where the subject of the discrimination is a state prisoner. *Lee v. Washington*, 390 U.S. 333, 333, 88 S.Ct. 994, 994, 19 L.Ed.2d 1212 (1968); *Tilden v. Pate*, 390 F.2d 614, 616 (7th Cir. 1968). We therefore reverse the district court's dismissal of this particular portion of Paragraph 12F.

■ Paragraph 12K alleges that the prison's policy of using female personnel in positions of vulnerability increases the risk of violence in the prison and poses a source of potential injury to the inmates. Plaintiffs fail to allege any likelihood of harm, however, of which they are not themselves the proximate cause. That is, the women might be an occasion of violence or be too physically weak to suppress it, but the inmates would have actively to initiate it. We affirm the district court's dismissal of Paragraph 12K of the complaint.[9]

■ Paragraph 12L alleges that prisoners at Pontiac possess insufficient opportunities for vocational and educational training. Failure to provide such programs, however, does not violate the Constitution in the absence of grievously debilitating prison conditions. *See Bono v. Saxbe*, 620 F.2d 609, 615 (7th Cir. 1980); *French v. Heyne*, 547 F.2d 994, 1002 (7th Cir. 1976). While inmates do not have a constitutional right to such programs, they are entitled to an environment that does not threaten their mental and physical well-being. *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977).

Plaintiffs' allegations fall far short of this standard. We are aware that the essence of an Eighth Amendment violation consists of the totality of the conditions of confinement. *Rhodes v. Chapman*, —— U.S. ——, ——————, 101 S.Ct. 2392, 2398–01, 69 L.Ed.2d 59 (1981). Plaintiffs' allegations concerning vocational and rehabilitation training, however, do not materially add to the alleged unconstitutionality of the totality of conditions present at Pontiac.[10] As the Supreme Court has noted, denials of such opportunities "do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind are simply not punishments." *Rhodes*, at ——, 101 S.Ct. at 2399. We therefore affirm the district court's dismissal of Paragraph 12L of the complaint.

■ The body of Paragraph 12M alleges that inmates are placed in disciplinary segregation "for the least infraction of a prison rule, such that the punishment is disproportionate to the offense committed . . . ." Appellants' Appendix at 39. The Eighth Amendment prohibition of disproportionate punishment extends to confinement in segregation. *Hutto v. Finney*, 437 U.S. 678, 685–87, 98 S.Ct. 2565, 2570–71, 57 L.Ed.2d 522 (1978). In light of *Hutto*, we hold that the above quoted allegation of Paragraph 12M, although somewhat conclusory, states a claim.

■ Paragraphs 12M(ii), 12M(iv) and 12M(v) elaborate on the conditions of segregated confinement and, essentially, allege that those conditions are unconstitutional. Specifically, the allegations focus on a lack of academic or vocational training, a lack of recreational opportunities, unrelieved confinement in cells and food that is cold or not on the menu for prisoners not in segrega-

---

**9.** To the extent that Paragraph 12K may allege that this condition is the result of inadequate training for the women guards, plaintiffs' claims are preserved by our disposition of Paragraph 12N. *See* pages 875–876, *infra*. Paragraph 12N would also preserve any claim of inmate violence directed at other inmates.

**10.** In any case challenging a wide range of prison conditions, some allegations are more serious than others vis-a-vis the Eighth Amend-

ment. *Rhodes*, however, seems to regard all of the conditions at a prison as relevant to the totality. *Rhodes*, at ——————, 101 S.Ct. at 2398–2400. We do not read *Rhodes* to allow a number of otherwise unquestionably constitutional conditions to become unconstitutional by their aggregation. We have thus attempted to focus this litigation by affirming the dismissal of claims that add little to the total picture.

tion.[11] There is no allegation regarding the length of confinement in segregation. These bare allegations, even reviewed under the liberal standards of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), are insufficient to state a claim under the Eighth Amendment even when evaluated in light of the totality of the conditions at Pontiac. *Bono v. Saxbe*, 620 F.2d 609, 613–14 (1980).[12]

Paragraph 12M(iii) alleges that "[i]nmates placed in segregation are forced to lose their assignment and placed among the rank[s] of unassigned when released from seg [segregation]." To the extent that this allegation is based upon concepts of disproportionate punishment, the claim is preserved by our handling of the body of Paragraph 12M. Insofar as Paragraph 12M(iii) alleges a claim based upon the imposition of this particular sanction on inmates subjected to segregated confinement, we do not believe that the allegation states a claim upon which relief can be granted. The alleged action by prison officials amounts to no more than a judgment that conduct meriting segregation also merits a loss of assignment to various prison programs. So long as the decision to impose the sanction is accompanied by the appropriate procedural safeguards, *see Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), no constitutional problems are presented.

Paragraph 12N of the complaint alleges that instances of overcrowding and understaffing at Pontiac have produced conditions which make it impossible for correction officers to protect weaker inmates from violence inflicted by other inmates. After noting in its order of August 2, 1979,

that this court had previously indicated that Paragraph 12N stated a claim upon which relief could be granted, a somewhat unfounded extension of this court's actual holding, the district court dismissed Paragraph 12N on consideration of the defendants' motion for summary judgment. *Madyun v. Thompson*, 484 F.Supp. 619, 622 (C.D. Ill.1980). Although ostensibly relying on summary judgment principles, the district court made no reference to the only affidavit filed by the defendants that was pertinent to Paragraph 12N.[13] The district court did expressly refer, however, to the standards normally relevant to a motion under Rule 12(b)(6). For example, the district court concluded that the "allegations in [Paragraph 12N], construed liberally, do not establish conditions which would constitute such cruel and unusual punishment." *Id.* at 622. In light of this, we shall evaluate the dismissal of Paragraph 12N under the standards of Rule 12(b)(6).

It has long been established that prisoners have rights under the Eighth Amendment to receive reasonable protection from harm inflicted by other inmates. *E. g., Finney v. Arkansas Board of Correction*, 505 F.2d 194, 201 (8th Cir. 1974); *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980); *Walker v. McCune*, 363 F.Supp. 254, 256 (D.Va.1973). While isolated acts of violence do not constitute cruel and unusual punishment, the complaint in the instant case, construed liberally, alleges that such attacks are frequent and are caused by the overpopulation and understaffing of the prison. This is sufficient to state a claim upon which relief may be granted.[14]

---

**11.** No allegation is made that the level of nourishment is insufficient to maintain the physical well-being of the inmates.

**12.** *See* note 10, *supra.*

**13.** This is understandable because the affidavit is not responsive to the allegations of Paragraph 12N. *See* Appellants' Appendix at 109.

**14.** The district court made some reference to the consent decree in *Stansbury* in its disposition of Paragraph 12N. *Madyun*, 484 F.Supp.

at 622. Apparently the district court believed that, to some unspecified degree, the consent decree rendered portions of the claim set out in Paragraph 12N moot. The only affidavit filed by the defendants addressing the allegations of Paragraph 12N stated that Pontiac was in compliance with the *Stansbury* population and prisoner assignment requirements. The *Stansbury* decree did no more in this regard than establish a ceiling on inmate population. Appellants' Appendix at 87. No provision of the *Stansbury* decree concerns the adequacy of staffing at

Paragraph 12–O describes alleged deficiencies in the internal prison investigative system for inmate and staff infractions. The only cognizable claim concerns a particular instance of the opening and censoring of a prisoner's legal mail. Paragraph 12–O is thus a particular allegation linked to the more general complaints regarding prisoner mail found in Paragraphs 12E(v)–12E(vii). We, therefore, vacate the district court's dismissal of Paragraph 12–O so that this allegation may be considered on remand in conjunction with the pertinent portions of Paragraph 12E of the complaint.

### IV. *Summary Judgment*

■ The district court disposed of the remaining allegations of the complaint by granting the defendants' motion for summary judgment.[15] The defendants' motion was accompanied by affidavits designed to show an absence of any material factual disputes. Plaintiffs filed no opposing affidavits as required by Rule 56(e) of the Federal Rules of Civil Procedure.[16] As the district court noted, a straightforward application of Rule 56(e) would require that summary judgment be granted in the instant case. *Madyun,* 484 F.Supp. at 620. The district court went on to note the signally commendable doctrine that courts should be cautious in resolving *pro se* prisoners' cases through summary judgment. *See, e. g., La Batt v. Twomey,* 513 F.2d 641, 650 (7th Cir. 1975); *Gordon v. Leeke,* 574 F.2d 1147 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). The central consideration should be whether the claims of the prisoners have had "fair and meaningful consideration." *Madyun,* 484 F.Supp. at 620. The district court went on to assess plaintiffs' access to factual proof, the apparent sophistication of the complaint and plaintiffs' handling of various preliminary motions. Despite these preliminary concerns about plaintiffs' *pro se*

status, the district court concluded that the "plaintiffs in our case cannot be classified as unsophisticated *pro se* prisoners who have no knowledge of the legal system" and made no adjustments to reflect plaintiffs' *pro se* status in its handling of defendants' motions for summary judgment.

As this court recently noted when reversing a grant of summary judgment against a *pro se* plaintiff,

> [s]ince his application for appointment of counsel was denied, plaintiff is 'entitled to an opportunity to offer proof' unless 'it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' *Haines v. Kerner,* 404 U.S. 519, 520–21 [92 S.Ct. 594, 595, 596, 30 L.Ed.2d 652] (1972). *See also Estelle v. Gamble,* 429 U.S. 97 [97 S.Ct. 285, 50 L.Ed.2d 251] (1976); *Chapman v. Kleindienst,* 507 F.2d 1246, 1248–49 n.2 (7th Cir. 1974). Here, plaintiff was not only denied counsel, but also was not informed that he could answer documents filed in support of the defendants' motion for summary judgment with his own documents, including affidavits.

*Muhammad v. Rowe,* 638 F.2d 693, 695–96 (7th Cir. 1981).

This court is not alone in its desire to see that *pro se* plaintiffs have a meaningful opportunity to defend against summary judgment motions. Consider, for example, the approach adopted in the District of Columbia Circuit:

> appellant in this case was not represented by counsel; and nothing in the record indicates that he was notified that failure to respond to appellees' motion and affidavit would result in the entry of summary judgment against him. Under these circumstances, appellant was clearly not

---

Pontiac or plaintiffs' underlying concerns regarding prisoner safety. Thus, the relief granted in *Stansbury* fails to render the claims alleged in Paragraph 12N moot.

**15.** Paragraphs 12E(v), 12E(vi), 12E(vii) and 12M(i) of the complaint. *Madyun v. Thompson,* 484 F.Supp. 619 (C.D.Ill.1980).

**16.** Rule 56(e) provides that, when a motion for summary judgment is made and supported by affidavits, "an adverse party may not rest upon the mere allegations or denials of his pleading...." Fed.R.Civ.P. 56(e).

afforded an 'opportunity' to comply with Rule 56(e) whether or not he also lacked the 'facilities' to do so. We hold that before entering summary judgment against appellant, the District Court, as a bare minimum, should have provided him with fair notice of the requirements of the summary judgment rule. We stress the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required.

*Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir.1968). And similar concerns have been voiced in various decisions of the Fourth Circuit:

> [I]f this were an ordinary civil action the failure of Roseboro to file any counter-affidavit would warrant the entry of summary judgment. We agree with the plaintiff, however, that there is another side to the coin which requires that the plaintiff be advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him.

*Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). See also Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979).

 Adequate knowledge of both the right to file and the necessity of filing counter-affidavits to oppose summary judgment is critical to the *pro se* litigant's access to a just disposition of the merits of his claim. Here, as in *Muhammad v. Rowe*, the district court did not inform plaintiffs of their right to file affidavits to oppose the summary judgment. In light of the detailed pleadings in the instant case [17] and the conclusory affidavits of the defendants, the district court erred in granting summary judgment without first alerting plaintiffs to the need for counter-affidavits under Rule 56(e).[18]

This disposition is particularly appropriate in the instant case where the prisoners' allegations challenge specific failures to follow established prison procedures. For example, Paragraphs 12E(v) and 12E(vii) allege that the legal mail of prisoners is censored and opened without inmates being present. As this court noted in its April 12, 1979 order, "there is at least serious doubt as to the constitutionality of such a practice. *See Adams v. Carlson*, 488 F.2d 619, 631 (7th Cir. 1973)." *Hammonds v. Thompson*, No. 78–2153, Unpublished Order at 2 n.2, (7th Cir. April 12, 1979). See also Procunier v. Martinez, 416 U.S. 396, 413–16, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1974). The affidavit filed in support of summary judgment merely states that the prison staff follows established prison procedures that adequately protect the rights of inmates. *See Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974). Given a meaningful opportunity to gather affidavits to illustrate specific instances of alleged wrongdoing, plaintiffs may be able to show that the policies are not always followed. Certainly, the nature of their allegations makes it even more important than usual that plaintiffs not be deprived, because of their ignorance of the role of affidavits under Rule 56(e), of a "full and fair opportunity" to pursue their claims. Technical rigor in dealing with summary judgment procedure is inappropriate where unrepresented and uninformed prisoners are involved.

### V. Conclusion

Plaintiffs filed this suit nearly four years ago and requested only equitable relief to redress what they perceived as intolerable and unconstitutional conditions at Pontiac. This is the third time that this court has

---

**17.** This court had previously stated that portions of the claims disposed of on summary judgment were not frivolous. *Hammonds v. Thompson*, No. 78–2153, Unpublished Order at 2 n.2, (7th Cir. April 12, 1979).

**18.** "[T]he court may, however, exercise a sound discretion in denying a motion for summary judgment although on the record the movant has made out a case therefor." 6 Moore's Federal Practice § 56.15[6] at 56–60 (1980 ed.). See, e. g., McLain v. Meier, 612 F.2d 349, 356 (8th Cir. 1979) (*pro se* plaintiff); *Roberts v. Browning*, 610 F.2d 528, 536 (8th Cir. 1979); *Hudson v. Hardy*, 412 F.2d 1091, 1095 n.12 (D.C.Cir.1968).

been required to return this suit to the district court for the consideration it warrants. With the passage of time, many of the allegations of the complaint, quite specific for a *pro se* filing, may no longer even be relevant in light of changed conditions at Pontiac. Accordingly, some amendments to the complaint may be necessary. We shall insist, however, that at this point, now with assistance of counsel, these inmates' claims receive more than superficial or perfunctory attention. Without indicating any view as to their ultimate merits, the time is past due to address these claims seriously in the full spirit of substantial justice.

In accordance with the determinations we have previously spelled out, we affirm the district court's dismissal of Paragraphs 12C, 12K, 12L, 12M(ii), 12M(iii), 12M(iv) and 12M(v) of the complaint. We reverse the district court's judgment for the defendants on Paragraphs 12D, 12H, 12I, 12J, 12P, 12R and 12S of the complaint. We also reverse the district court's dismissal of Paragraphs 12E(iv), 12F(in part), 12M(body) and 12N of the complaint. Finally, we vacate the district court's dismissal of Paragraphs 12E(i), 12E(ii), 12E(iii), 12A, 12B, 12G, 12Q, 12–O and 12F (in part) of the complaint and vacate the district court's judgment for the defendants on Paragraphs 12E(v), 12E(vi), 12E(vii) and 12M(i) of the complaint. We remand the appropriate portions of the complaint for further proceedings consistent with this opinion.[19]

Affirmed In Part, Reversed In Part And Vacated In Part And Remanded.

---

**19.** Circuit Rule 18 shall apply on remand. Plaintiffs have requested that this case be remanded to Judge Baker, who is now overseeing compliance with the *Stansbury* decree and who is presiding over other suits challenging prison conditions at Pontiac. We decline to remand specifically to Judge Baker, but plaintiffs may, of course, seek a transfer or consolidation if the proceeding is not assigned to Judge Baker on remand.