John TARKOWSKI, Plaintiff,

v.

Jack HOOGASIAN, Michael Sieman, Joseph Seputis and Thomas Seputis, Defendants.

No. 74 C 2976.

United States District Court, N. D. Illinois, E. D.

Feb. 19, 1982.

Martha L. Ashenhurst, Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., for plaintiff.

John A. Dienner, III, Sp. Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

John Tarkowski has filed a third amended complaint, pursuant to 42 U.S.C. § 1983,

against Jack Hoogasian, Michael Sieman, Joseph Seputis, and Thomas Seputis. Hoogasian was the State's Attorney for Lake County, Illinois, during the fall of 1974. Sieman was an assistant state's attorney for Lake County, Illinois, during the fall of 1974. The third amended complaint alleges that Joseph and Thomas Seputis, doing business as "Tom's Auto," were the agents of the Lake County State's Attorney's office and specifically of Hoogasian and Sieman. A court order from the Circuit Court of Lake County authorized Tom's Auto to go onto Tarkowski's land and to remove, salvage, or buy various vehicles and materials. The complaint alleges that on September 20, 1974, Thomas and Joseph Seputis, under the personal direction of Sieman went onto Tarkowski's land and removed or destroyed many items of personalty and several buildings, including items which were not listed in the court order. The defendants allegedly sold some of the personalty, but gave none of the proceeds to Tarkowski.

The third amended complaint was filed on April 8, 1981. On January 16, 1976, we dismissed Tarkowski's pro se second amended complaint against various defendants including Thomas and Joseph Seputis on all claims, and against Hoogasian and Sieman on all claims except an allegation of discriminatory prosecution. On June 22, 1981, we rejected a challenge to the third amended complaint which the Seputises based upon the statute of limitations and the concepts of res judicata and collateral estoppel.

The defendants Hoogasian and Sieman now move for dismissal for lack of jurisdiction and failure to state a claim. Specifically, the defendants contend that the Supreme Court's recent opinion in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), establishes that deprivation of property rights by state officials acting under color of state law does not violate due process if state law provides adequate remedies to redress the loss. Accordingly, they contend, an essential element of Tarkowski's section 1983 claim— that the deprivation occurred without due process of law—could not be established if

state tort law was available and adequate to redress his losses. For the reasons stated below, we deny the defendants' motion.

## I.

*Parratt* involved a state prisoner's claim that the loss or theft of a "hobby kit," valued at $23.50, had resulted from the negligence of prison officials. Justice Rehnquist suggested in *Parratt* that negligence may support recovery under section 1983 for loss of property in some cases:

Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights. In *Baker v. McCollan*, [443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)], we suggested that simply because a wrong was negligently as opposed to intentionally committed did not foreclose the possibility that such action could be brought under § 1983. We explained:

"[T]he question whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action."

101 S.Ct. at 1912, *quoting Baker v. McCollan*, 443 U.S. at 139–40, 99 S.Ct. at 2692; *see Project: Eleventh Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1980–1981*, 70 Geo.L.J. 365, 817 (1981). The initial inquiry in a section 1983 action, however, is (1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 101 S.Ct. at 1913.

The Court held in *Parratt* that Nebraska's provision for remedies adequate to redress a prisoner's property loss caused by the negligence of state officials satisfied the due process clause. *Id.* at 1917. Justice

Rehnquist reasoned that the Fourteenth Amendment protects only against those deprivations by the state which occur without due process. *Id.* at 1913–14. In some cases, due process requires a predeprivation hearing. *Id.* at 1914. But where a meaningful predeprivation hearing may be impractical or even impossible, "the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities" will satisfy due process. *Id.* at 1916.

The Court adopted the reasoning of Justice Stevens (then Judge Stevens) in *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir. 1975) ("*Bonner* I"), *modified en banc,* 545 F.2d 565 (1976) ("*Bonner* II"), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), a case where a prisoner alleged that prison officials, following a "shakedown" of his cell during his absence, "made it possible by leaving the door of Plaintiff's cell open, for others without authority to remove Plaintiff's trial transcript from his cell." 517 F.2d at 1318. Justice Stevens concluded:

> It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against "State" deprivations of property; in the latter situation, however, even though there is action "under color of" state law sufficient to bring the amendment into play, the state action is not necessarily complete. For in a case such as this the law of Illinois provides, in substance, that the plaintiff is entitled to be made whole for any loss of property occasioned by the unauthorized conduct of the prison guards. We may reasonably conclude, therefore, that the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment.

*Id.* at 1319, *quoted in Parratt,* 101 S.Ct. at 1916.

The logic of *Parratt* and *Bonner,* at least theoretically, might just as easily apply to intentional, as well as to negligent, deprivations of property by state officers acting under color of state law, though neither *Parratt* nor *Bonner* addresses intentional deprivations of property. Justice Rehnquist's opinion in *Parratt* distinguished between cases where a tortious loss results from a state employee's "random and unauthorized act," 101 S.Ct. at 1915, and those property deprivations which result from and give rise to a challenge to "some established state procedure." *Id.* at 1917.

In the first category, a state officer negligently fails to follow a state procedure, resulting in an injury to the plaintiff. The plaintiff does not challenge the applicable state procedures themselves, and, after *Parratt,* apparently cannot maintain his action under section 1983 if state law provides an adequate remedy for recovery of his property or compensation for its value. In the second category, however, a state official properly follows state procedures, with resultant harm to the plaintiff. The plaintiff's lawsuit challenges those procedures as not in compliance, given the facts alleged, with due process, and is actionable under section 1983. *See, e.g., Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

Broadly viewed, Justice Rehnquist's classification of cases where a tortious loss results from a state officer's "random and unauthorized act," 101 S.Ct. at 1915, might well include instances where the plaintiff alleges that a state official intentionally failed to follow state procedures and thereby caused the plaintiff injury. As in instances in which negligence is the basis for a complaint of deprivation of property, the plaintiff does not challenge the state procedures themselves. While *Parratt* addresses only negligent failure to follow established procedures, its reasoning that the existence of remedies adequate to redress the plain-

tiff's loss eliminates the constitutional basis of his claim does not hinge on whether the alleged deprivation resulted from negligent or intentional conduct; in both instances "the deprivation occur[s] as a result of the unauthorized failure of agents of the State to follow established state procedure." 101 S.Ct. at 1917.

## II.

It is by no means clear, however, that *Parratt* applies to intentional as well as to negligent deprivation of property or to other than deprivation of property cases where adequate postdeprivation proceedings are available to redress the alleged property loss. *See Parratt,* 101 S.Ct. at 1918 (Blackmun, J., concurring, with White J., concurring); *id.* at 1923 (Marshall, J., concurring in part and dissenting in part); *Bonner v. Coughlin,* 657 F.2d 931, 933 n.3 (7th Cir. 1981) (per curiam) ("*Bonner* III"); *Madyun v. Thompson,* 657 F.2d 868, 873 (7th Cir. 1981). Indeed, prior to *Parratt,* but after the Seventh Circuit's en banc opinion in *Bonner* II, the Seventh Circuit distinguished between negligent and intentional deprivations of property for the purpose of determining the availability of a cause of action under section 1983. *Kimbrough v. O'Neil,* 545 F.2d 1059 (7th Cir. 1976) (en banc).

In *Kimbrough,* a prisoner alleged that when he entered the county jail, the defendant deputy sheriff took a $2,500.00 diamond ring from him, and gave him an inventory receipt for the property. Upon Kimbrough's transfer to a federal prison, the defendant failed to return his ring. The Seventh Circuit held that Kimbrough's allegation that the deputy sheriff, or someone else on the staff of the county jail, had stolen the ring stated a claim under section 1983 regardless of whether he had an adequate remedy in the Illinois courts. 545 F.2d at 1061. The court noted that the legislative history of section 1983, *see Monroe v. Pape,* 365 U.S. 167, 172–83, 81 S.Ct. 473, 476–81, 5 L.Ed.2d 492 (1961), disclosed that Congress had intended to provide a deterrent for official misconduct. The

court reasoned that if Kimbrough could prove that the deputy sheriff or any other employee of the Sheriff's office "either intentionally or with reckless disregard caused his property loss, the remedy afforded under Section 1983 may deter similar misconduct." 545 F.2d at 1061 (footnote omitted). The Seventh Circuit has, since *Parratt,* reaffirmed the *Kimbrough* holding that an allegation of an intentional taking of property by a state official acting under color of state law states a claim under section 1983. *Madyun v. Thompson,* 657 F.2d 868, 873 (1981).

Application of *Parratt* to cases where deprivation of property by a state official allegedly was intentional would make section 1983 unavailable in all but those very few instances where state law does not provide an "adequate" remedy for alleged constitutional deprivations. *Monroe* did not chart such a restrictive perimeter for section 1983 litigation. On the contrary, Justice Douglas noted in *Monroe* that section 1983 overlaps some state remedies and is in that sense "supplementary":

> Although the legislation was enacted because of the conditions that existed in the South at that time, it is cast in general language and is as applicable to Illinois as it is to the States whose names were mentioned over and again in the debates. It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.

365 U.S. at 183, 81 S.Ct. at 482. Justice Harlan, in his concurring opinion in *Monroe,* indicated that it is only natural that some overlap or redundancy may exist between section 1983 and state remedies:

> [T]he enacting Congress was not unaware of the fact that there was a substantial overlap between the protections granted by state constitutional provisions and those granted by the Fourteenth Amendment. Indeed, one opponent of the bill, Senator Trumbull, went so far as to state in a debate with Senators Carpenter and

Edmunds that his research indicated a complete overlap in every State, at least as to the protections of the Due Process Clause.

365 U.S. at 198, 81 S.Ct. at 490 (Harlan, J., concurring) (footnote omitted); *see generally*, Whitman, *Constitutional Torts*, 79 Mich.L.Rev. 5, 11–25 (1980).

As indicated, though *Parratt* concerned an allegation that a state official's negligent conduct had caused the loss of the plaintiff's property, its logic does not distinguish between negligent and intentional conduct. But where intentional acts are alleged, the existence of postdeprivation state remedies does not mean that the alleged conduct did not violate due process. *Kimbrough v. O'Neil*, 523 F.2d 1057, 1061 (7th Cir. 1975) (Swygert, J., concurring), *aff'd en banc*, 545 F.2d 1059 (1976). "A state officer who uses his office and the power of the state to lawlessly confiscate, damage, or destroy the property of another deprives that person of due process regardless of any consideration concerning hearings." *Id.* We do not read *Parratt* as going beyond its own facts. The Court, in *Parratt*, certainly did not repeal section 1983 in cases in which a state official's intentional deprivation of constitutional rights including property rights is involved simply because a state tort action may be available. Only Congress could effect such a repeal and it has not done so.

In short, *Kimbrough*, rather than *Parratt* and *Bonner*, controls the issue raised by defendants' motion. Tarkowski is entitled to attempt to prove that the defendants intentionally, or with reckless disregard,[1] destroyed or removed from his land certain personal property and buildings. Because we decide that *Kimbrough* rather than *Parratt* applies here, we need not address the efficacy (which is disputed) of the state remedies which were available to Tarkowski.

1. *See Kimbrough v. O'Neil*, 545 F.2d 1059, 1061 n.4 (7th Cir. 1976) (en banc); *id.* at 1061–62

CONCLUSION

For the reasons stated above, we deny the defendants' motion. An appropriate order will enter.