James Vincent MASTROTA, Plaintiff,

v.

William B. ROBINSON, Glen R. Jeffes, Edmund Gaffney, Guy C. Smith, II, Defendants.

Civ. A. No. 79–1914.

United States District Court, E. D. Pennsylvania, Civil Division.

March 3, 1982.

David M. Felder, Philadelphia, Pa., for plaintiff.

Leroy S. Zimmerman, Atty. Gen., of Pennsylvania, Harrisburg, Pa., Marc G. Brecher, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION AND ORDER

EDWARD R. BECKER,* Circuit Judge.

This lawsuit is a prisoner's civil rights action. Plaintiff James Vincent Mastrota seeks redress for injuries he suffered after his temporary transfer from the State Correctional Institution at Dallas, Pennsylvania ("Dallas"), to the State Correctional Institution at Graterford, Pennsylvania ("Graterford"), in June 1977. Plaintiff alleges that defendants abridged his Sixth Amendment right to counsel, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment due process rights by acts and omissions that are detailed below. He also asserts state law claims sounding in tort. Currently before us is defendants' motion for summary judgment,[1] which we will grant in part and deny in part.

---

* Of the United States Court of Appeals for the Third Circuit, sitting by designation.

1. This suit was commenced by plaintiff pro se. By order of February 28, 1980, we appointed counsel to represent plaintiff. The nine defendants named in the original complaint moved for summary judgment shortly thereafter. Plaintiff, through appointed counsel, then moved for leave to amend his complaint by eliminating five named defendants; adding three defendants identified as John Doe, John Roe, and John Coe; and adding pendent tort claims. On June 29, 1981, we heard oral argument on both plaintiff's motion for leave to amend and defendants' motion for summary judgment. After we granted plaintiff's motion with respect to the addition of pendent claims and denied plaintiff's motion with respect to the addition of Doe, Roe, and Coe, both parties filed supple-

Accepting the truth of plaintiff's representations, the pertinent facts are as follows. On May 31, 1977, plaintiff was informed by an unidentified block officer at Dallas that he would be transferred the next day to Graterford for a parole revocation hearing. Plaintiff asked to call his attorney to inform him of the transfer and scheduled hearing. This request was denied by the block officer because a Pennsylvania Bureau of Correction policy prohibits telephone calls on the day prior to interinstitutional transfers. Plaintiff also inquired about his housing status at Graterford, because a criminal co-defendant against whom plaintiff had testified was housed in the general population there. Plaintiff was told by the block officer that at all state institutions incoming prisoners were placed in maximum security units.

On June 1, plaintiff was transported to Graterford and, despite his protests, was placed in the general inmate population. Defendant Guy C. Smith and a second guard arrived the next morning at plaintiff's cell to remove him to administrative segregation. While plaintiff was being escorted to his new cell, an inmate wielding a homemade knife stabbed plaintiff in the abdomen. According to plaintiff, Smith made no effort to protect him.

Plaintiff was taken to the Pottstown Memorial Medical Center, where abdominal surgery was performed on him by defendant Dr. Edmund Gaffney. Plaintiff was returned to the Graterford prison hospital several days later. Throughout his stay at Pottstown and Graterford, plaintiff repeatedly complained of severe back pain to Dr. Gaffney. Dr. Gaffney prescribed medication for plaintiff but did not order that x-rays or other diagnostic tests be performed.

Plaintiff was transferred back to Dallas on June 13, 1977. There doctors discovered an abdominal infection and ordered that x-rays be taken of plaintiff's back, which disclosed a vertebral fracture. Approximately two weeks after his return to Dallas, plaintiff was examined at the Nesbith Memorial Medical Center. His doctors told plaintiff that his abdominal infection had resulted from Dr. Gaffney's failure to insert a drainage tube in the incision following surgery. The necessary drainage tube was inserted in late June and removed in mid-July.

Plaintiff asserts that he has been permanently injured as a result of these events. Specifically, he suffers from a hiatel hernia, recurrent abdominal infections, and frequent numbness in his legs.

This action is brought pursuant to 42 U.S.C. § 1983 (1976) against Smith; Dr. Gaffney; William B. Robinson, Commissioner of the Pennsylvania Bureau of Correction; and Glen R. Jeffes, Superintendent at Dallas. Plaintiff claims first that the Bureau of Correction policy prohibiting telephone calls prior to inter-institutional transfers infringed his Fourteenth Amendment due process right of access to the courts and his Sixth Amendment right to counsel.[2] Second, he claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide adequate protection for him at Graterford and by subsequently deliberately failing to provide him with adequate medical care. Third, plaintiff raises pendent assault and medical malpractice claims. Defendants have moved for summary judgment on each of these claims.

■ The Supreme Court reiterated the two elements of a section 1983 action in its recent decision in *Parratt v. Taylor*, 451

---

mental memoranda addressing the propriety of summary judgment.

**2.** Plaintiff's amended complaint includes this Sixth Amendment claim, but we understand plaintiff's counsel to have admitted at oral argument that the Sixth Amendment right to counsel is not relevant to the facts of this case. *See* Record of Hearing of June 29, 1981, at

39–40. Even if plaintiff has not conceded this point, it is clear that judgment must be granted for defendants on the Sixth Amendment claim. *See Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974) (Sixth Amendment reaches "only to protect the attorney-client relationship from intrusion in the criminal setting").

U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981): "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Defendants in this case admit that they were acting under color of state law at the times relevant to this action, so we need to address only the second question in ruling on defendant's motion.[3]

*Prohibition of Pre-Transfer Telephone Calls.* Defendants admit that the Bureau of Correction denies inmates access to telephones on the day prior to an inter-institutional transfer. They submit, and support by the affidavit of Robert N. Mauger, Deputy Superintendent at Graterford, that this policy responds to a legitimate concern for security in the state prison system. According to Mauger, the purpose of the telephone ban is to prevent inmates from informing persons outside the prisons of the time, date, and route of the inmates' travel and so to prevent escape attempts. Only two guards travel in each prison van, which may carry as many as sixteen inmates.

Plaintiff urges that the state's concern for security could be met without preventing an inmate from contacting his attorney. Thus, he contends, the Bureau of Correction policy impermissibly infringed his right of access to the courts, through his attorney, at a time when he might have sought to stop the transfer or to assure that he was adequately protected at Graterford.

■ Plaintiff's arguments reflect a misunderstanding of the applicable legal principles. First, plaintiff's right of access to the courts does not include the right to contact his attorney preceding an inter-institutional transfer. In *Wolff v. McDonnell, supra* note 2, 418 U.S. at 576, 94 S.Ct.

at 2984, on which plaintiff relies, the Supreme Court made clear that that right is primarily concerned with an inmate's ability to prepare and file court papers in habeas corpus and civil rights actions. *See also Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). Plaintiff's ability to present constitutional claims to the courts is not implicated in this case. Second, even if plaintiff's access right were infringed, the Bureau of Correction policy is a valid response to an undoubted security risk. Thus some retraction of plaintiff's constitutional rights would be justified. *See Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979). Third, to the extent that plaintiff's attack on the state's policy rests on his contention that a less restrictive rule would satisfy the state's security interest, his argument is precluded by the Third Circuit's decision in *St. Claire v. Cuyler,* 634 F.2d 109, 114–15 (3d Cir. 1980), in which the Court of Appeals explicitly disapproved the application of a "least restrictive regulation requirement" to the decisions of prison administrators. Finally, we note that neither Pennsylvania law nor the federal constitution confer on plaintiff a right not to be transferred temporarily between institutions. *See Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); Pa. Stat.Ann. tit. 61, § 78 (Purdon 1964 & Supp. 1981–82) (authorizing transfer of "any convicts imprisoned at the time in any State penitentiary to any other State penitentiary"). Accordingly, we will grant summary judgment for defendants on this claim.

■ *Failure to Provide Adequate Protection.* Plaintiff contends that defendants, or some of them, violated their duty to afford him reasonable protection from assaults by other inmates, *see Wojtczak v. Cuyler,* 480 F.Supp. 1288, 1303 (E.D.Pa.1979). Counsel

---

**3.** Plaintiff also asserts a cause of action based on 42 U.S.C. § 1985(3) (1976). To prevail on this claim, plaintiff must show that defendants conspired to deprive him of the equal protection of the laws and that the conspiracy was motivated by "class-based, invidiously discriminatory animus," *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). *See also Rogin v. Bensalem Town-*

*ship,* 616 F.2d 680, 697 (3d Cir. 1980), *cert. denied sub nom. Mark-Garner Assoc., Inc. v. Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Plaintiff has not alleged facts or proffered evidence pointing to animus or identifying the protected class that is the subject of the alleged conspiracy. Therefore we will grant summary judgment for defendants on plaintiff's § 1985 claims.

for defendants conceded at oral argument that summary judgment on this issue might be inappropriate. We agreed and, ruling from the bench, denied defendant's motion for summary judgment on this claim. *See* Record of Hearing of June 29, 1981, at 41. Because plaintiff's pendent assault claim is based on the same facts as his inadequate protection claim, we will deny defendants' motion for summary judgment on the state law claim as well.

■ *Deliberate Indifference to Medical Needs.* Plaintiff contends that Dr. Gaffney's treatment, or mistreatment, of him demonstrated the "deliberate indifference to [his] serious medical needs" that will support a section 1983 cause of action. *See Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). Defendants respond that plaintiff's allegations state at most a cause of action for medical malpractice. They support their motion for summary judgment on this claim by the affidavit of Dr. Gaffney and plaintiff's pertinent medical records.

■ As the Third Circuit noted in *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978), the test of *Estelle v. Gamble* has two parts: "[i]t requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." We have no doubt that the latter part is satisfied by the undisputed facts relating to plaintiff's injuries. By contrast, plaintiff has adduced no facts that suggest deliberate indifference. Prison medical personnel must be afforded at least the same latitude in diagnosing and treating injuries and illnesses that is afforded doctors in the community. *See Inmates of Allegheny County v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). When evaluated in light of these principles, we think it clear that whatever the deficiencies in Dr. Gaffney's treatment of plaintiff, they do not rise to the level of a constitutional deprivation.[4] Thus we will grant summary judgment for defendants on this claim and dismiss plaintiff's pendent medical malpractice claim, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

In sum, for the reasons given in this opinion, we will grant summary judgment for defendants on plaintiff's claims that the Bureau of Correction policy prohibiting pre-transfer telephone calls violated his Sixth and Fourteenth Amendment rights and that defendants showed deliberate indifference to his medical needs in violation of his Eighth Amendment rights. We will deny summary judgment on plaintiff's claim that defendants failed to provide him with adequate protection, in violation of his Eighth Amendment rights.

---

4. Compare *Estelle v. Gamble, supra* page 438, 429 U.S. at 107–08, 97 S.Ct. at 292–93:

   [Gamble's] complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." [Citations omitted.] The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued.... But the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice....