**Willie WILLIAMS, Plaintiff,**

v.

**Michael LANE, et al., Defendants.**

**No. 81 C 355.**

United States District Court,
N. D. Illinois, E. D.

Sept. 3, 1982.

---

929

Jack A. Rovner, Robert E. Shapiro, Kirkland & Ellis, Chicago, Ill., for plaintiff.

John J. Curry, Jr., Asst. Atty. Gen., State of Ill., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

 Willie Williams ("Williams"), an inmate of Stateville Correctional Center ("Stateville"), brings this class action[1] challenging the constitutional validity of conditions in Stateville's Protective Custody Unit (the "Unit"). Defendants are present and former (1) state officials with overall administrative responsibility for Stateville and (2) Stateville Wardens and Assistant Wardens. Defendants have moved to dismiss the Complaint for failure to state a cause of action and on related grounds. Their motion is denied except as to Complaint ¶ 33.

*Facts*[2]

On December 15, 1976 the Illinois Department of Corrections adopted Administrative Regulation 808 ("A.R. 808"), which provides for the creation of a Unit in each Illinois maximum-security prison. Each Unit is intended to house residents who request protective custody because their safety and

**1.** Initially Williams filed a pro se complaint. At the Court's request Robert Shapiro, Esq. and Jack Rovner, Esq. of Kirkland & Ellis have acted as appointed counsel, filing an Amended Complaint (the "Complaint") and providing invaluable service to their client and the Court. Now that the Complaint has survived defendants' motion to dismiss, the parties are expected to address the class certification issues promptly.

**2.** As always on a Fed.R.Civ.P. ("Rule") 12(b)(6) motion, all well-pleaded allegations of the Complaint are deemed admitted, with every reasonable doubt resolved in favor of the pleader. *See Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Burns v. Paddock,* 503 F.2d 18, 25 (7th Cir. 1974). Ironically enough, defendants seek to contrast the Complaint's allegations with the more particularized statements in Williams' original pro se effort, to the former's disadvantage—though in *legal* terms the Complaint is of course better structured and more informative as to its claims. Defendants' position is wholly at odds with the notice pleading concept of Rule 8(a).

security are threatened in the general prison population. Such status is accorded only upon a finding by prison authorities that it is justified for the requested purpose, and is subject to periodic review by the authorities.

A.R. 808 requires that the Unit be a separate facility to keep contact between Unit residents and the rest of the prison population to a minimum. It also provides, "Housing and programmatic accommodations shall be comparable to those provided for the general population."

Stateville's Unit was formerly located in a cellhouse used exclusively for protective custody purposes. In January 1979 the Unit was moved to Cellhouse B, several galleries of which are used to house disciplinary segregation and general population prisoners. Assignment to the Unit is often for periods in excess of six months; in Williams' case it has continued for more than three years.

### Claims and Responses

Williams states that both as a result and as a condition of their protective custody status, he and other class members are denied:

(1) "regular and reasonable" access to religious programs and the chapel;

(2) "regular and reasonable" access to the law library and thus the courts;

(3) food and food services comparable to those provided the general population;

(4) regular access to showers, cleaning materials to clean their cells and regular laundry services;

(5) a minimum of one hour per day of outdoor recreation and any other opportunity to exercise outside their cells;

(6) access to education programs comparable to those provided to the general prison population;

(7) access to the general library and hobby crafts;

(8) opportunity to work or participate in vocational programs and thus to earn wages or otherwise engage in productive or rehabilitative activity;

(9) protection from contact with the general prison and disciplinary segregation populations.

Williams asserts those denials violate several constitutional provisions [3]: the Eighth Amendment (implicated by the totality of Unit conditions); the First Amendment (through denial of religious access); the "fundamental constitutional right of access to the courts"; the Due Process Clause of the Fourteenth Amendment (through deprivation of the liberty interests established by A.R. 808); and the Equal Protection Clause of the Fourteenth Amendment as well (by failure to provide conditions comparable to those furnished the general prison population). Williams also claims violation of A.R. 808 as such.

Defendants move to dismiss based on three general arguments:

1. Williams has failed to state a constitutionally-based cause of action in various respects.

2. Williams fails to allege the requisite degree of personal involvement on defendants' part.

3. Conditions in the Unit have been previously litigated and are subject to a consent decree.

Only the first of those arguments raises serious questions, so its several branches will be treated first and at some length.

### Eighth Amendment Claims

Because the parties have focused most of their constitutional discussion on the Eighth Amendment, this opinion will address that subject at the outset. As will become apparent, there can be no real dispute on the controlling principles of substantive law. What is really at work here is a conflict in pleading philosophies—a battle that defendants, out of tune with Rule 8(a), must lose.

---

**3.** All such claims are of course grounded in the Fourteenth Amendment, because state action is involved. In conformity with common (though not purist) usage, this opinion will cite directly to the Bill of Rights provision (such as the Eighth Amendment) for any due process claims that rest on Bill of Rights principles incorporated into the Fourteenth Amendment.

In reliance on *Rhodes v. Chapman,* 452 U.S. 337, 345–50, 101 S.Ct. 2392, 2398–2401, 69 L.Ed.2d 59 (1981), *Madyun v. Thompson,* 657 F.2d 868, 874 (7th Cir. 1981) teaches "the essence of an Eighth Amendment violation consists of the totality of the conditions of confinement." At the same time *Madyun, id.* at 874 n.10 tells us *Rhodes* may not be read to "allow a number of otherwise unquestionably constitutional conditions to become unconstitutional by their aggregation."

■ *Rhodes* itself, 452 U.S. at 347, 101 S.Ct. at 2399, stated the general standard for judging whether prison conditions constitute "cruel and unusual punishment" proscribed by the Eighth Amendment: They "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." Then *Madyun,* 657 F.2d at 874, prescribed a more precise test for the present kind of case: Prisoners are "entitled to an environment that does not threaten their mental and physical well-being." *See also Battle v. Anderson,* 564 F.2d 388, 403 (10th Cir. 1977).

■■ Williams has passed that test, at least in pleading terms, and only pleading is at issue today. After alleging the various conditions complained of, which constitute the "environment" for Unit inmates, the Complaint goes on to allege the effect of those conditions on such inmates (¶ 41):

> They have also suffered, are suffering and, unless defendants are enjoined, will continue to suffer severe mental and emotional pain, humiliation and degradation.

"Totality of conditions of confinement" necessarily implicates questions of degree—fact questions—that cannot be foreclosed at

the threshold pleading stage. So long as all the matters complained of are not obviously incapable of rising to Eighth Amendment levels, familiar principles of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957) mandate denial of defendants' motion.[4]

*First Amendment Claim*

■ Complaint ¶ 25 alleges plaintiffs "are being and ... will continue to be denied regular and reasonable access to religious programs and to the chapel and have thus been denied the means to exercise their religious beliefs." That claim too is constitutionally protected, *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972).

■ Essentially defendants urge in response that any restrictions imposed are reasonable exercises of their powers to administer Stateville. That may of course ultimately prove to be the case. But the key words in the last sentence are "ultimately" and "prove": Because proof necessarily involves a determination of fact, it cannot be forestalled by a pleading motion.[5]

*Access to the Courts*

■ Law library access has consistently been held a constitutionally protected right of prisoners, linked to the "fundamental constitutional right of access to the courts," *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Though *Bounds* did not precisely identify the source of that right in the Constitution, this Court is bound to adhere to its principles and uphold that aspect of the Complaint against attack.

*Equal Protection Claims*

■ *Durso v. Rowe,* 579 F.2d 1365, 1371–72 (7th Cir. 1978) insulates the Com-

---

4. *Rhodes* and *Madyun* dealt with a number of conditions similar to several asserted in the Complaint (items (4), (5), (7) and (8) in the litany recited earlier) and found them wanting in Eighth Amendment terms. In light of the controlling precedents those grievances can survive (if at all) only under equal protection notions in comparison with the general prison population.

5. This paragraph could be inserted in every section of this opinion. It should already be plain that defendants' motion is illustrative of the all-too-prevalent practice of wasting litigants' substance (in this case, imposing on volunteer pro bono counsel for plaintiffs and spending scarce public funds on behalf of defendants) on Rule 12(b)(6) motions, when few such motions have merit.

plaint's claims of unequal treatment against dismissal. *Durso* teaches a prisoner's complaint based upon purposeful distinctions among inmates—more than "mere inconsistency in prison management"—states a prima facie Equal Protection Clause claim:

> The lack of a fundamental constitutional right or the absence of a suspect class merely affects the court's standard of review; it does not destroy the cause of action.

Thus to the extent the Complaint asserts treatment for prisoners in the Unit unequal to that afforded prisoners in the general population (and see n.4), it properly invokes the Equal Protection Clause.

This decision saves pro tanto all the claims adverted to in n.4 as well as those literally stated in unequal treatment terms. It remains to be seen, of course, whether those claims can in fact survive a factual scrutiny under the applicable standard of review.

*A.R. 808 Claims*

■■■ Two independent theories preserve the Complaint's claims of violation of A.R. 808, which mandates that defendants provide "[h]ousing and programmatic accommodations ... comparable to those provided for the general population." Either is sufficient to overcome defendants' motion.

First, A.R. 808 establishes a protected (though limited) liberty interest in such "comparable" accommodations for prisoners as a condition of their being placed in a Unit. *Cf. Bono v. Saxbe,* 620 F.2d 609, 616 (7th Cir. 1980). Second, even were that not so the claims are sufficiently intertwined

---

**6.** It should be pointed out that this action seeks damages as well as injunctive relief. Dismissal of this action because of the individual *Meeks* settlement would be obviously inappropriate.

**7.** Indeed this aspect of the decision follows a fortiori from the newly-announced opinion of our Court of Appeals in *Crowder v. Lash,* 687 F.2d 996 at 1007–11 (7th Cir. 1982). *Crowder* held a prisoner seeking damages for unconstitutional conditions of confinement is not barred by an earlier *class* action that litigated the same questions but sought only injunctive and declaratory relief. It agreed with *Bogard v. Cook,* 586 F.2d 399, 408–09 (5th Cir. 1978) that it would be

---

with the federal claims already discussed to justify their retention as pendent state law claims.

*Defendants' Amenability to Suit*

■■■ Defendants advance the groundless argument that they cannot be held responsible because they are or were supervisory employees. As Williams' Mem. 17 points out:

> The Amended Complaint plainly states that each of the defendants is or was an administrator with *direct* responsibility for the adoption and implementation of constitutional procedures for the protective custody unit at Stateville.

All the defendants are the policymakers who allegedly committed or caused to be committed the wrongs complained of. This is not an impermissible respondeat superior lawsuit.

*Effect of Meeks v. Lane*

■■■ Finally defendants urge a bizarre theory for dismissal (or at worst transfer) of this action based on the settlement of a prior individual action brought in this District Court, *Meeks v. Lane,* 74 C 96. That settlement calls on defendants to change certain conditions in the Unit on a 1984 timetable. It is of course irrelevant whether and to what extent Williams' claims may be identical to those in *Meeks.*[6] *Meeks* is not a class action and Williams cannot be bound by the terms of its settlement.[7] And transfer of this action to the three-judge court that considered *Meeks* would not conform to the rules of our District Court regarding case assignments.

> a harsh and improper application of res judicata to hold, on the basis of the notice sent out in [a previous class action suit] that prisoners forfeited their rights to personal redress for lack of knowledge that federal law ... required that injunctive and monetary relief be sought in one action.

*Crowder* reached its result even though the plaintiff there had *notice* of the prior action. So far as appears here Williams had no notice at all of *Meeks,* so to bar his action would be even more "harsh and improper" in *Crowder* terms.

*"Contact" With the Prison Population*

Only one of defendants' arguments ultimately withstands analysis—that challenging Williams' claim that he is subject to "contact with the general and disciplinary segregation populations" (Complaint ¶ 33). True enough, Williams is *in* the Unit precisely because he is thought to be endangered by the general inmate population. Nonetheless, the mere fact that he is exposed to "contact" with other prisoners does not, as a matter of law, give rise to a claim that defendants are not providing him with "reasonable protection." Williams has therefore *not* alleged a prima facie case as to this conduct by defendants.

*Conclusion*

Defendants' motion to dismiss is denied except as to Complaint ¶ 33, which is stricken. Defendants are ordered to answer the Complaint on or before September 20, 1982.