$____ – 0 – ____

**Willie WILLIAMS, Plaintiff,**

**v.**

**Michael LANE, et al., Defendants.**

**No. 81 C 355.**

United States District Court,

N.D. Illinois, E.D.

Dec. 17, 1982.

Jack A. Rovner, Robert E. Shapiro, Kirkland & Ellis, Chicago, Ill., for plaintiff.

John J. Curry, Jr., Asst. Atty. Gen. of Illinois, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Willie Williams ("Williams"), an inmate in the Protective Custody Unit ("Unit") at Stateville Correctional Center ("Stateville"), brings this 42 U.S.C. § 1983 ("Section 1983") class action against present and former Stateville Wardens, Assistant Wardens and other officials with overall administrative responsibility for the prison. Seeking both equitable relief and damages, Williams charges defendants have violated the rights of Unit residents under the First, Eighth and Fourteenth Amendments[1] by denying them:

(1) "regular and reasonable" access to religious programs and the chapel;

(2) "regular and reasonable" access to the law library and thus the courts;

(3) food and food services comparable to those provided the general population;

---

1. In accordance with this Court's regular practice, alleged constitutional violations will be addressed in terms of the underlying Bill of Rights provisions, even though conceptually *all* are really grounded on the Fourteenth Amendment (the only provision directly controlling state action).

(4) regular access to showers, cleaning materials to clean their cells and regular laundry services;

(5) a minimum of one hour per day of outdoor recreation and any other opportunity to exercise outside their cells;

(6) access to education programs comparable to those provided to the general prison population;

(7) access to the general library and hobby crafts; and

(8) opportunity to work or participate in vocational programs and thus to earn wages or otherwise engage in producing or rehabilitative activity. .

See this Court's prior opinion denying defendants' motion to dismiss Williams' Complaint, 548 F.Supp. 927 (N.D.Ill.1982).

Three motions are now before this Court:

1. Williams' motion for class certification under Fed.R.Civ.P. ("Rule") 23;

2. defendants' motion for leave to file jury demand under Rules 6(b)(2) and 39(b); and

3. Williams' motion for an order requiring defendants to give his counsel advance notice of his transfer from the Unit.

For the reasons stated in this memorandum opinion and order, the first motion is granted and the second and third are denied.

### Class Determination

Williams seeks to maintain this action on behalf of all persons who have been at any time since December 15, 1976 (when the Unit was first created), who are now or who will be housed in the Unit. Because Williams has satisfied the requirements of Rules 23(a) and 23(b)(2), class prosecution of the claims is proper at least as to present and future occupants of the Unit.[2]

■ Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Those conditions have come to be known, conveniently if not elegantly, as (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation.

Rule 23(a)(1) is plainly satisfied. As of October 26, 1982 there were 233 inmates resident in the Unit.[3] That showing (plus the fluidity of the current-resident group) is enough for impracticability of joinder, and the problem is aggravated by the appropriateness of including future residents (who by definition cannot be joined as named plaintiffs) in the class. Defendants' speculative contention that many prisoners might want exclusion from the class is irrelevant in threshold terms (after all, even were the prediction to prove accurate, decertification could be considered at a later date).

As for Rule 23(a)(2), common questions of law and fact abound. Indeed virtually every question presented is common to the

---

**2.** Briefing by the parties as to *past* Unit occupants has not been adequate to permit a decision as to their inclusion in the class (or in a differently-defined class). Rule 23(b)(2) looks to injunctive relief (primarily though not exclusively), and past confinees need no such remedy. Williams' argument that such persons may again be confined to the Unit is unpersuasive, because if that were the case they would already be covered by the class's inclusion of future occupants. Thus the real question as to past occupants is the propriety of Rule 23(b)(3) certification, and the various considerations identified in that Rule have not been fully addressed in the requisite way. For example, would Williams seek a Rule 23(b)(3) certifica-

tion as to past occupants alone (given the availability of Rule 23(b)(2) to present and future occupants)? If so, are that Rule's prerequisites satisfied? If not, is it appropriate to keep the Rule 23(b)(2) certification at all, or should Rule 23(b)(3) simply extend to everyone (past, present and future)? Because of the numerous unanswered questions, this order is without prejudice to Williams' prompt further action as to the past occupants.

**3.** That figure was reported by the panel charged with monitoring the individual-plaintiff consent decree in *Meeks v. Lane,* No. 75 C 96 (referred to later in this opinion).

class. Because existence of the challenged conditions in the Unit forms the factual core of each member's claim, the factual issues raised by each claim converge. Similarly, the legal issues involved in the constitutional validity of those conditions are identical. *Accord, Kissane v. Brown,* Nos. 80 C 1727 and 1728, slip op. at 2 (N.D.Ill. Aug. 11, 1981) (class action challenging prison conditions for detainees satisfied commonality requirement).

Williams has also met the typicality requirement of Rule 23(a)(3). As this Court found in *Resnick v. American Dental Ass'n,* 90 F.R.D. 530, 539 (N.D.Ill.1981), the test was stated succinctly in Newberg, *Class Actions* § 1115(b), at 185 (1977):

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.

Surely all the class members' claims stem from the "same practice or course of conduct," for every Unit inmate faces the same prison conditions at issue here. And as already noted, Williams' legal theories for condemning the conditions underpin the claims of every class member. Nor does the unusual length of Williams' confinement in the Unit render his claim atypical, as defendants insist. While a class member's tenure in the Unit affects the level of his damages (an issue for which class certification is not sought), it has no bearing on the gravamen of his claim: the asserted constitutional infirmity of various aspects of the Unit environment.

As for Rule 23(a)(4), Williams is certainly an adequate class representative. His will-ingness to press his claims pro se for almost a year manifests his resolve to improve protective custody conditions. Moreover Williams' court-appointed counsel, members of the Kirkland & Ellis law firm, are eminently qualified to prosecute this action.

██ Defendants attempt to denigrate Williams' representative capacity by speculating that class members may disagree as to what relief (in the form of specific religious, educational, vocational and rehabilitative opportunities) should be mandated. That kind of objection (which would apply to any proposed class representative) is deficient in two respects:

1. It does not cast doubt on the solidarity among class members to have current Unit conditions declared unlawful.[4]

2. More important, this Court can afford class members the opportunity to comment on the issue of relief if their views on this subject are truly discordant.

In any event, the proper resolution of this speculative problem need not be confronted until the constitutionality of Unit conditions has been adjudicated. *See Calvin R. v. Lane,* No. 82 C 1955, slip op. at 4 (N.D.Ill. Sept. 20, 1982).[5]

██ Having satisfied the Rule 23(a) criteria, Williams need meet only one of the three alternatives of Rule 23(b), in this case Rule 23(b)(2):

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

By making the allegedly unconstitutional deprivations of the Unit a condition of pro-

---

4. Approximately 150 Unit inmates recently expressed mutuality of interest by signing a petition protesting current conditions in the Unit. That petition was submitted in connection with the *Meeks* litigation discussed later.

5. Defendants assert Williams is unqualified to serve as class representative for two other reasons:
   1. Other pending litigation supposedly involves the same issues.
   2. More than one class representative is required because of the large size of the class.

Their first assertion does not implicate Williams' ability to represent the class at all. Instead it questions the superiority of a class action over other available methods for adjudicating the controversy (an issue discussed later). As for the second argument, 3B Moore *Federal Practice* § 23.07[4], at 23–242 to 243 makes clear that quality not quantity is the touchstone of Rule 23(a)(4). Here the caliber of Williams' (and his counsels') representation makes irrelevant the absence of additional class representatives.

tective custody status, defendants have clearly "acted or refused to act on grounds generally applicable to the class." And if Williams' allegations are borne out, the *class-wide* injunctive relief he seeks will be appropriate. That plaintiffs also seek some monetary relief does not defeat a Rule 23(b)(2) determination, for the primary relief sought is injunctive. *See Johnson v. Brelje,* 482 F.Supp. 121, 125 (N.D.Ill.1979).

Accordingly Williams has satisfied the requirements of Rules 23(a) and 23(b)(2). He may proceed in this litigation on behalf of all present and future inmates assigned to the Unit.[6]

### *Defendants' Jury Demand*

Defendants have moved for permission to file an untimely jury demand. Under Rule 38(b), any party desiring a jury trial on an issue must make a written request "at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue."

■ Defendants' October 7, 1982 Answer to Williams' Amended Complaint was the "last pleading directed to [the] issue[s]" triable by jury. But because that Answer was itself untimely, the ten day deadline for their jury demand must be measured not from the Answer's actual filing date but rather from its September 20 due date under this Court's September 3 order.[7] Thus the last day for defendants' jury demand was September 30. Though just seven days

delinquent, defendants therefore have no *right* to jury trial under Rule 38(b).

■ Nevertheless Rule 39(b) permits "the court in its discretion upon motion [to] order a trial with a jury of any or all issues." Case law does not uniformly accord a district court discretion to grant such relief where a jury demand's tardiness is attributable solely to counsel's inadvertence. Compare the minority view in *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 70 (2d Cir.1967) (a showing beyond mere inadvertence required to invoke discretion under Rule 39(b)) with the more prevalent position as exemplified by *Aetna Casualty & Surety Co. v. Jeppesen & Co.,* 642 F.2d 339, 341 (9th Cir.1981) (recognizing district court's discretionary latitude in such circumstances).

■ However, this Court will not now exercise its preference for the latter position, for defendants' counsel has not even proffered inadvertence as the excuse for his failure. Instead counsel acknowledges that he knew of the September 20 filing obligation when the Court announced it September 3, but merely asserts he was "engaged in [other] pressing matters" until the filing deadline expired. Curry Aff. at 2. That statement, though perhaps ambiguous, seems to suggest counsel simply chose to pursue what he presumably viewed as more important matters rather than prepare a timely answer and jury demand. Nor did counsel see fit to seek an extension (*see*

---

**6.** Defendants strenuously urge class certification is "inappropriate" in view of the pendency of two other lawsuits, the individual consent decree in *Meeks v. Lane* (No. 75 C 96) and the class action captioned *Calvin R. v. Lane* (No. 82 C 1955). It might be a sufficient answer that such consideration is specifically made relevant by Rule 23(b)(3) but not 23(b)(2). But there is much more—the compelling factor that neither of those cases is sufficiently "related" to this one to preclude class certification in any event. As this Court's earlier opinion (548 F.Supp. at 932) makes plain, *Meeks* is dramatically different from this case because it:

    1. is not a class action (and thus is not binding on Williams or any of the other putative class members);

    2. defers any required change in Unit conditions until 1984; and

    3. provides no monetary relief for anyone other than Meeks himself.

As to *Meeks,* see also the Appendix to this opinion. And *Calvin R.* is at least equally irrelevant. It focuses solely on measures taken to ensure the safety and security of all Stateville inmates (not just Unit residents), while this class action specifically centers on non-safety related conditions in the Unit itself. Indeed, when this Court struck from the Amended Complaint the allegations concerning Unit inmates' "contact with the general and disciplinary segregation populations," the only arguable material similarity to *Calvin R.* vanished.

**7.** This Court's order (548 F.Supp. at 933) had granted defendants seven days more to file their answer than the ten day standard provided under Rule 12(a)(1).

*Connecticut General Life Insurance Co. v. Chicago Title & Trust Co.,* 690 F.2d 115 (7th Cir.1982)).

At least at this point, counsel's conduct cannot be characterized as inadvertent. Discretionary relief under Rule 39(b) will therefore be denied. *Chandler Supply Co. v. GAF Corp.,* 650 F.2d 983, 987–88 (9th Cir.1980). This determination is without prejudice to a renewed submission by defendants' counsel (in affidavit form) if inadvertence is in fact shown to be the reason for his delinquency.

### Advance Notice of Williams' Transfer

■ Williams has moved for an order directing defendants to give Williams' counsel advance notice before transferring him from protective custody (either to another part of Stateville or to another institution). Williams argues his counsel will need to confer with him frequently and thus must be kept apprised of his whereabouts at all times, particularly during the coming months when discovery will be in full swing.

Though defendants might appropriately have rested their opposition solely on Williams' lack of need (there are some non sequitur aspects in the relationship between the justification advanced and the relief sought), they have not done so. Instead they vigorously assert two grounds to resist any departure from their administrative practice of not providing pre-transfer notification to anyone:

   1. There is no constitutional or statutory basis for imposing this advance notification requirement on defendants.

2. Current administrative procedures [8] would allow Williams to communicate with his lawyers no more than two or three days after his transfer, and in some circumstances would permit pre-transfer communication. Thus, the policy justification for defendants' refusal to afford advance notice—to foster institutional security and administrative convenience—warrants any arguable dilution (which defendants deny) in Williams' rights.

It is worth observing, before this opinion turns to the merits of the issue, that defendants and their counsel are quick to hold Williams and his counsel to the letter of their legal rights, without any willingness to bend defendants' internal administrative rules to accommodate Williams' perceived concern at little or no cost to defendants. However—as with respect to defendants' counsel's failure to make a timely jury demand—defendants and their counsel are even quicker to urge that the letter of the law *not* be applied to *them,* and that the Court bend the legal rules to accommodate *their* perceived desire at little or no cost to Williams. Defendants and counsel, if unwilling to heed the Biblical admonition of "Do unto others...," might consider another from the same source (*Matthew* 26:52):

> All they that take the sword shall perish with the sword.

As to the merits, it appears to make little sense for defendants to insist on their policy here. Having prison authorities inform highly reputable counsel of a prisoner's destination can hardly pose security problems (and of course even such counsel need not be apprised of the specific timing of the

---

**8.** Those procedures (as stated in Exhibit E of defendants' memorandum, Legal Counsel Debra J. Anderson for the Illinois Department of Corrections) may be paraphrased this way:

1. Removal from protective custody:
   (a) If the appropriate Stateville officials determine Williams no longer requires protective custody, he may file a grievance and remain in the Unit pending disposition of his grievance. Williams could therefore apprise counsel of the authorities' decision (and the pending grievance) before any such removal.
   (b) If Williams violates a rule of the institution, he may be removed from protective

custody without a prior hearing. In that case he would have the opportunity to correspond with his attorneys as soon as he arrives in "segregation."

2. Inter-institutional transfer:
   (a) Before Williams is transferred to another institution, Stateville authorities *might* advise defendants' counsel, who could then rely the message to Williams' counsel.
   (b) Otherwise Williams could communicate with his counsel by phone or mail after he arrives at the transferee institution.

transfer or the route to be taken).[9] Nor would even a generally applicable advance notice procedure seem to be unduly burdensome, for defendants need only record counsel's phone number in each prisoner's personnel file.

Nonetheless this Court is not at liberty to substitute its judgment for that of defendants. It must defer to their asserted administrative expertise unless the challenged policy infringes Williams' rights. And at this stage the Court is unable to perceive any such intrusion.

Certainly Williams is entitled to communicate with his counsel. That right derives from the constitutional guaranties of access to the courts and of effective assistance of counsel. However, that right does not require defendants to give Williams' counsel pre-transfer notice unless (at a minimum) Williams would be unable to reach counsel for a significant time period following his transfer.[10] Apparently such is not the case. According to defendants, applicable administrative procedures would permit Williams to communicate with his lawyers within a few days of his transfer whatever its justification.

In light of those representations, this Court will deny Williams' motion. Needless to say, if the representations are not borne out (or if Williams were to be transferred out of retaliation), this Court would consider appropriate action.

### Conclusion

This action may proceed as a class action under Rule 23(b)(2) as to the following class:

All persons who are now or who are hereafter designated under Administrative Regulation 808 for residence in a Protective Custody Unit at Stateville Correctional Center.

Defendants' motion for jury trial is denied without prejudice to possible reassertion on an appropriate showing. Williams' motion for an order requiring advance notice to his counsel of any proposed transfer of Williams from the Unit is denied. Finally defendants are ordered to show cause as provided in the Appendix.

### Appendix

Substantial grounds exist for questioning the good faith of the office of the Attorney General as defendants' counsel in asserting *Meeks* as a basis for denying class certification here. This Court's earlier opinion (548 F.Supp. at 932) had already rejected that case as a bar to this action, on grounds squarely applicable to the subject matter of the current opinion. Reassertion of the same arguments here—particularly given the nature of the Court's prior ruling—must be characterized as frivolous.

But if any question existed on that score, it has been dispelled by the Attorney General's conduct of the *Meeks* litigation itself. Less than two months before filing the memorandum opposing class certification here in reliance on *Meeks,* the Attorney General's office (faced with a motion in *Meeks* by Stateville Unit-confined inmates seeking a temporary restraining order or contempt citation) filed a September 13, 1982 response in that case:

1. objecting to the *Meeks* Court's jurisdiction because there had been no class certification there and the inmates (not being plaintiffs) lacked standing;

2. contesting any violation of the *Meeks* consent decree because the compliance period "does not expire until July 1, 1984," making the inmates' complaints "not ripe for review at this time";

---

**9.** Indeed this administrative control over the information imparted to the lawyer distinguishes this case from *Mastrota v. Robinson,* 534 F.Supp. 434, 437 (E.D.Pa.1982), which upheld a ban on pre-transfer telephone calls directly between the prisoner and any outsider, including his counsel.

**10.** Absent such special circumstances, this Court agrees with Judge Becker's observation in his thoughtful *Mastrota* opinion (534 F.Supp. at 437) that "plaintiff's right of access to the courts does not include the right to contact his attorney preceding an inter-institutional transfer."

3. moving for class certification in *Meeks* under Rule 23(b)(2) because it "will promote judicial economy by requiring inmates seeking injunctive and declaratory relief relating to protective custody confinement to proceed in the instant case for such relief"![1]

It is perhaps conceivable that there may be some legitimate basis for what appears on the face of things to be paltering with this Court by such totally inconsistent assertions. Yet even if there were, at the very least the Attorney General's office has breached its duty of full and fair disclosure to the Court. It was only through Williams' reply memorandum that this Court learned of the Attorney General's assertions in *Meeks* that are prima facie wholly at odds with the arguments then advanced here.

Appointed counsel are acting pro bono publico for Williams and the class. It would be a gross imposition on them if their burdens of representation were multiplied by what at this stage seems egregious conduct by opposing counsel. Accordingly defendants' counsel are ordered to show cause on or before December 27, 1982 as to why they should not be subjected to the payment of excess expenses and for attorneys' fees, for having "multiplie[d] the proceedings ... unreasonably and vexatiously" (28 U.S.C. § 1927). This Court will then determine whether Williams' counsel should submit a claim in that respect.

[1]. That class certification motion was taken under advisement. This Court is transmitting a copy of this opinion to the *Meeks* Court.