**Michael T. WHITE, et al., Plaintiffs,**

v.

**Terry L. MORRIS, et al., Defendants.**

**No. C–1–88–470.**

United States District Court,
S.D. Ohio, W.D.

Dec. 1, 1992.

Robert Franklin Laufman, Cincinnati, OH, for plaintiffs.

Michael T. White, pro se.

Sharon Janine Zealey, Ohio Atty. General's Office, Cincinnati, OH, for defendants.

## ORDER APPROVING THE PROPOSED SETTLEMENT

SPIEGEL, District Judge.

This matter is before the Court on the Joint Motion of the Parties to Approve the Consent Decree Settling this Action (doc. 75), Objections to the Consent Decree[1] (doc. 79), (doc. 82), (doc. 83), (doc. 84), (doc. 89), (doc. 96), (docs. 97–198), (doc. 201), (docs. 202–273), Class Counsel's Response to the Objections (doc. 274), Notice of Objection (doc. 275), Defendant's Response (doc. 276), Second Original Consent Decree (doc. 277), the Filing of Affidavits (doc. 278), and the Motion for Relief (doc. 280).

## BRIEF HISTORY OF THIS LITIGATION

Plaintiff Michael White brought this case *pro se* in 1988. Mr. White alleged that the Defendants assigned inmates to double cells on a racially segregated basis. In

---

1. Objections to the Proposed Consent Decree have come in various forms, including motions, letters, and petitions. The Court will treat all the matters opposing the Proposed Consent Decree as Objections. Accordingly, all motions by class members are denied.

other words, Mr. White contends that the Defendants intentionally put white inmates in double cells with other white inmates, and put black inmates in double cells with other black inmates.

In April 1991, the Court appointed counsel for Mr. White to represent him in this litigation. Shortly thereafter, the Court certified a class. The class is composed of the following persons:

All inmates at the Southern Ohio Correctional Facility now or in the future who have been or will be placed in general population.

Order, doc. 55. After the Court denied several motions for summary judgment, the parties negotiated a consent decree which resolves all pending disputes in this case, provided this Court approves of the decree.

In the proposed settlement to this litigation, the parties have agreed to a consent decree prohibiting cell assignment based upon race, unless the Warden or his designee personally finds a segregated cell to be necessary. *See* doc. 78.

Interestingly, prior to the consent decree, the Defendants voluntarily instituted a policy of random cell assignment. Warden Tate testified at the fairness hearing that this policy has been effectively implemented. Integrated double cells have increased from 1.7% to 26–31% since the policy began. Furthermore, violence at the Southern Ohio Correctional Facility has not increased since prison officials implemented this policy.

## STANDARD OF REVIEW

The task of this Court is to review the proposed settlement, because a class may settle its claims only with the Court's approval. Fed.R.Civ.P. 23(e). This Court has conducted a fairness hearing in an effort to determine whether the proposed settlement is "... fair, adequate, and reasonable...." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL–CIO*, 803 F.2d 878, 880 (6th Cir.1986), *cert. denied sub nom., Jones v. Clark Equip. Co.*, 480 U.S. 934, 107 S.Ct. 1574, 94 L.Ed.2d 765 (1987) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.1982), *cert. denied sub nom., Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983)). This Court, as the trial court, has discretion in determining the fairness of the proposed plan. *Laskey v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 638 F.2d 954, 957 (6th Cir.1981).

Despite the fact that this Court has discretion, "[t]he court's role in evaluating a private consensual agreement 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.' " *Clark Equip.*, 803 F.2d at 880 (quoting *Officers for Justice*, 688 F.2d at 625). As a result, the Court has the power to take only three actions when faced with a proposed settlement in a class action: (1) to approve the proposed settlement in whole; (2) to reject the proposed settlement without recommendations for modification; and (3) to reject the proposed settlement, but with suggestions and recommended changes. *Bronson v. Bd. of Educ. of the City Sch. Dist. of Cincinnati*, 604 F.Supp. 68, 73 (S.D.Ohio 1984).

The burden of proving the fairness of the proposed settlement rests with its proponents. However, an initial presumption of fairness exists if the settlement is recommended by class counsel after arms-length bargaining. Herbert B. Newberg, 2 *Newberg on Class Actions* § 11.41, at 453 (2d ed. 1985). We, nevertheless, must keep in mind that in the context of a settlement agreement, both Class Counsel and the Defendants have proposed a compromise to the controversy at hand, and accordingly, both are interested in obtaining the Court's approval.

Consequently, this Court must consider certain factors when it determines whether the proposed settlement is fair, adequate, and reasonable. First, we must compare the strength of the Plaintiffs' case with the amount and form of relief offered

by the settlement. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed.2d 59 (1981); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *Bronson*, 604 F.Supp. at 73. Second, the Court should search for the presence of collusion. *Id.* Third, the Court should analyze the amount and nature of discovery. *Id.* Fourth, the Court must consider carefully any objections raised by class members. *Id.*

## DISCUSSION

■ Racial segregation in prisons is prohibited. *Lee v. Washington*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (forbidding state-mandated racial segregation in prisons); *Jones v. Diamond*, 594 F.2d 997, 1011–12 (5th Cir.1979), *cert. dismissed, sub nom. Ledbetter v. Jones*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981) ("... racial segregation within prisons is unconstitutional...").

Closer to home, the court in *Stewart v. Rhodes*, 473 F.Supp. 1185 (S.D.Ohio 1979), *appeal dismissed without op.*, 661 F.2d 934 (6th Cir.1981), *and aff'd without op.*, 785 F.2d 310 (6th Cir.1986), faced squarely the issue of segregation in the celling of inmates. The *Stewart* court held that segregating inmates by cell was impermissible, because such a practice violated the equal protection clause of the United States Constitution. *Id.* The *Stewart* court issued an injunction, prohibiting the defendants from assigning inmates on the basis of race. The *Stewart* court did, however, provide an exception where

> ... the superintendent of the institution personally finds it to be necessary and prepares a specific statement in writing and with supporting reasons stating that the inmate in question should not be confined in an integrated cell; such finding is to be made a part of the inmate's prison record.

*Id.* at 1194.

In light of the law, we find that the Plaintiffs have a strong case. The Plaintiffs have statistical evidence demonstrating that inmates were not celled randomly. *See* doc. 274, at 2 (even when 40% of all inmates were presumed to be hostile to the other race, the probability that the remaining inmates were celled randomly was zero out of ten thousand). Furthermore, the law in the Southern District of Ohio is clear that inmates may not be celled based upon race without extenuating circumstances. *Stewart*, 473 F.Supp. at 1185. Therefore, we hold that the relief offered by the proposed settlement is reasonable in light of the strength of the Plaintiffs' case.

Second, we must examine whether the proposed settlement is the product of collusion. The primary test of collusion is whether the proposed settlement itself is fair, adequate, and reasonable. *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D.Ohio 1992) (J. Spiegel). Given the *Stewart* decision, we believe that the proposed settlement is fair, adequate, and reasonable. Moreover, there is no evidence whatsoever that the proposed settlement is the product of collusion.

Third, we should consider the nature and amount of discovery which the parties have conducted. Although there is no absolute minimum amount of discovery that must be conducted, by examining the docket sheet and various pleadings, this Court is aware of a fair amount of discovery that has taken place since this case began in 1988. The Defendants conducted enough discovery to move for summary judgment twice. The Plaintiffs also moved for summary judgment. Thus, this Court holds that Counsel for the Defendants and the Plaintiffs had enough information to intelligently and reasonably settle this case.

Fourth, we must consider carefully the objections to the proposed settlement. This Court cannot accurately determine exactly how many inmates have objected to the proposed settlement, because some inmates have filed multiple objections. We do know that a total of 182 objections from class members have been docketed as of September 23, 1992. The Objectors give a number of reasons behind their opposition to the proposed settlement. We shall examine these reasons in turn.

### General Objections Based on Various Reasons

Many Objectors oppose the consent decree for religious, political, or personal reasons without further elaboration. These objections fail to state why their religion, politics, or personal opinions conflict with the proposed settlement. Moreover, these objections do not outweigh the constitutional right of the class to a desegregated prison, given the importance of desegregation in our constitutional scheme with the Fourteenth Amendment. *See Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972) ("... only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion.").

### Objections Based on a Specific Religion

Several inmates have claimed membership in a particular religion, whose tenets forbid the mixing of the races. However, the right of these inmates to freedom of religion does not outweigh the constitutional right of the Plaintiffs to a desegregated prison.

Furthermore, these inmates have a recourse under the proposed consent decree. The Warden or his designee may segregate a cell if he personally finds it be necessary. The Warden or his designee may find it necessary to segregate if the inmate harbors such racial hostility or animosity that he cannot be placed in an integrated cell without the risk of violence.

### Objection to a Lack of Contempt Procedure

Some inmates have objected to paragraph 13 of the consent decree which provides that proceedings to enforce the terms of the order shall not be brought in the form of a motion for contempt. This provision does not render the consent decree toothless, however. If the consent decree is violated after informal attempts to resolve the matter have failed, the Plaintiffs may move the Court to order the Defendants to comply with the consent decree.

### The Consent Decree Will Result in Increased Violence

Some of the Objectors claim that the consent decree will result in increased violence. This objection defies recent history. Beginning in the spring of 1991, Warden Tate began enforcing a random celling policy. Warden Tate testified that violence at the Southern Ohio Correctional Facility has decreased since he adopted a random celling policy.

Moreover, even if increased violence would result in the future, which we do not expect, the United States Constitution cannot be abrogated because of the threat of violence. Otherwise, minorities in this country would have few rights, in light of the violence involved in this nation's struggle for racial equality.

### White does not Represent the Interests of All Class Members

Some inmates have maintained that Plaintiff Michael White and his attorneys do not represent their interests. This Court has already certified a class and has held that Mr. White is an adequate representative of the class. Furthermore, all members of the class need not agree as to the relief sought. *See Williams v. Lane,* 96 F.R.D. 383 (N.D.Ill.1982). Therefore, this Court holds that Michael White and his attorneys are adequately and properly representing the class.

### All Cells Must Be Integrated

Some class members believe that the consent decree requires that every cell must be integrated. The consent decree, however, requires *random* celling. Thus, some double cells will have two black inmates, some will have two white inmates, while still others will have a white and a black inmate.

### Objections Based Upon Homosexuality

Many inmates object on the basis that inmates who reside voluntarily in integrated cells must be homosexual. This belief makes voluntary segregation impossible on a widespread basis. This misperception

will gradually disappear as the Southern Ohio Correctional Facility places non-homosexual inmates in integrated cells.

### Objections to Double Celling

Some class members believe that the consent decree requires double celling. The consent decree does not require double celling. Instead, it only requires that those prisoners who are assigned to double cells be assigned to those cells on a random basis, unless the Warden or his designee personally finds such an assignment to be unwise.

### Objections to Forced Integration

Some class members object to random celling because they believe that integration should be voluntary. Until 1991, the practice at the Southern Ohio Correctional Facility was to assign cells based on race, but to permit some cell changes on a voluntary basis. This practice resulted in only 1.7% of the double cells being integrated in May 1991. The consent decree changes the presumption. Inmates are assigned to double cells randomly, and may only be moved if the Warden or his designee makes a specific finding that the change is necessary.

### Objections Concerning Damages

Several inmates complain that Plaintiff Michael White should not receive payment. Others maintain that they also are entitled to monetary damages.

Mr. White brought this litigation seeking individual relief, and as a class action seeking to enjoin the practice of segregated celling. The settlement of the class action for injunctive relief does not preclude members of the class from seeking damages in individual actions. The payment to Mr. White is for settlement of his individual damage claim, only.

### Objections Seeking to be Excluded from the Class

Some class members request that they be excluded from this class action. However, class members may not opt out of a Rule 23(b)(2) class.

### Objections as to the Notice of the Proposed Class Action

Some class members have objected to the notice of the proposed class action. Specifically, the class members have complained that Appendix A of the Consent Decree was missing from the notice provided to the class. After the parties learned that Appendix A was missing, Appendix A was posted with the proposed consent decree. Furthermore, this Court ordered a second notice to class members, complete with Appendix A. Therefore, we conclude that the class has received proper notice of the proposed class action.

## CONCLUSION

In essence, the proposed settlement forces the Defendants to obey the law. The law requires that prison officials not assign inmates to double cells because of racially discriminatory reasons, unless particular circumstances merit otherwise. Since May 1991, the Defendants have followed the law. According to the representations of both counsel, the integration of double cells has not resulted in increased violence or trouble at the prison. The consent decree merely follows the successful policy of cell assignments already developed by the Defendants. The consent decree, however, ensures that the Defendants will not revert to their policies of the past.

Consequently, we find the proposed settlement to be fair, adequate, and reasonable. It is approved. This Order shall be posted in the same manner that the notice of the hearing was posted. We intend that the class be fully informed of this Court's decision.

SO ORDERED.