**Michael T. WHITE, et al., Plaintiffs,**

v.

**Terry L. MORRIS, et al., Defendants.**

No. C–1–88–470.

United States District Court, S.D. Ohio, Western Division.

Sept. 21, 1994.

Robert Franklin Laufman, Cincinnati, OH, for plaintiff.

Michael T. White, pro se.

Scott A. Conan, pro se.

William E. Martin, pro se.

Robert Warren Myers, Ohio Atty. Gen., Columbus, OH, Sharon Janine Zealey, Ohio Atty. Gen. Office, Cincinnati, OH, for defendant Terry L. Morris.

## ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

SPIEGEL, District Judge.

This matter is before the Court on Plaintiff's Motion for Attorney Fees (doc. 342) which the Defendant opposes in their response (doc. 347), and to which the Plaintiff has replied (doc. 348).

### BACKGROUND

This motion is in regards to the ongoing process of desegregation at the Southern Ohio Correctional Facility (hereinafter "SOCF") in Lucasville, Ohio. In this case, the Plaintiffs were a class of prisoners who sued claiming that SOCF segregated its prison in violation of the Fourteenth Amendment of the United States Constitution. This matter was settled by a consent order approved by this Court on December 4, 1992, 811 F.Supp. 341 (doc. 282).

In April of 1993, however, a riot occurred at SOCF, and following the riot SOCF returned to a policy of segregating prisoners according to race and moved to modify the consent decree (doc. 303). Plaintiff opposed this motion, arguing that if SOCF could not safely integrate its double cells it should be ordered to single-cell inmates until it could safely integrate (doc. 305). Plaintiff further requested sensitivity training for the personnel.

On July 15, 1993, this Court approved SOCF's request to modify, but ordered SOCF to "fully reestablish the implementation of the Consent Decree's random policy of celling by no later than January 1, 1994." We later granted a joint motion by the parties allowing implementation to be delayed until L–Block was re-opened on April 1, 1994 (doc. 330). This Court also ordered sensitivity training for the personnel (doc. 317).

On February 11, 1994, SOCF adopted a policy of single celling, whereby no inmate would be celled with another inmate. Thus, the Plaintiffs achieved their goal, as articulated in the July 15, 1993 hearing. Plaintiffs now request that the Defendants pay Plaintiffs' attorney fees and costs according to 42

U.S.C. § 1988. Plaintiffs submit exhibits stating the exact hours their attorneys worked. Mr. Robert Laufman worked 88.8 hours at $175 an hour between the April 1993 riot and this motion. Mr. Alphonse Gerhardstein worked 35.2 hours at $185 an hour during this same period. The Plaintiffs further claim costs for overnight shipments to an expert at a cost of $32.45, a motel room for their expert at $42.51 and copies at $248.15. Thus, the Plaintiffs are seeking a total of $323.66 in costs and $21,690 in attorney fees.

## DISCUSSION

### I. Attorney's Fees

A. Plaintiffs are a "Prevailing Party."

The Plaintiffs originally filed this suit pursuant to 42 U.S.C. § 1983. The Plaintiffs now seek attorney fees and costs pursuant to 42 U.S.C. § 1988, which provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The Defendants argue that Plaintiffs were not a "prevailing party" in this instance, since a consent decree was entered. The Supreme Court, however, has stated that:

Nothing in the language of § 1988 conditions that the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a *consent judgment* or without formally obtaining relief."

*Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (emphasis added) (quoting S.Rep. No. 94–1011, p. 5 (1976)). In this case, the Defendants initially consented to the desegregation of cells and eventually entered a joint motion with the Plaintiffs whereby single celling would be instituted at SOCF. None of this would have occurred had the Plaintiffs not proceeded with this lawsuit. The fact that no litigation took place or that the Defendants consented to the Plaintiffs' demands is irrelevant. In fact, the Supreme Court has said:

[I]f the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have *prevailed.*

*Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) (emphasis added).

The Sixth Circuit has adopted a two-prong test to determine whether a party has prevailed. *Johnston v. Jago,* 691 F.2d 283, 286 (1982). The First Circuit first enunciated this test in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978). In *Nadeau,* the plaintiffs sought attorney's fees for a civil rights action, where the plaintiffs challenged unconstitutional conditions of confinement. *Nadeau,* 581 F.2d at 277. That suit also terminated in a consent decree. *Id.* The district court in that case rejected plaintiff's request for attorney's fees because it found that all parties worked together to obtain the result. *Id.* at 277–78. The First Circuit reversed enunciating the two-prong test that the Sixth Circuit adopted in *Johnston v. Jago,* 691 F.2d at 286. "First, in order to qualify as a 'prevailing party,' a plaintiff must demonstrate that his or her lawsuit was causally related to securing the relief obtained." *Johnston,* at 286. Secondly, the Sixth Circuit stated that the plaintiff must establish some minimum basis in law for the relief secured. *Id.*

Even if the plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.

*Id.* (quoting *Nadeau,* 581 F.2d at 281). This, however, is purely a legal inquiry and does not require a full trial on the merits. *Id.*

Rather, we only need consider "whether the plaintiff's claim is 'frivolous, unreasonable, or groundless.'" *Id.* (quoting *Nadeau,* 581 F.2d at 281).

Applying the *Nadeau/Johnston* test to the case at bar dictates that attorney's fees should be granted. With respect to the first prong of the test, the Plaintiffs filed this suit in order to stop SOCF from racially segregating its prisoners. As a result of the Plaintiffs actions SOCF consented to desegregation, which later led to single celling. Therefore, changes occurred at SOCF because of the Plaintiffs lawsuit. Secondly, we must make a legal determination, essentially whether the Plaintiffs claim is frivolous. *Johnston,* 691 F.2d at 287. In this instance, it is obvious that Plaintiffs claims were not frivolous. The Plaintiffs had a legitimate claim that segregation within the prisons was a violation of their Fourteenth Amendment Right to Equal Protection. Additionally, the Defendant would not have consented to the desegregation and the eventual single celling if the Plaintiffs had not filed this suit. Consequently, the Plaintiffs are the "prevailing party" and the award of attorney's fees is appropriate.

B. Plaintiffs Monitoring of the Consent Decree was Necessary.

■ Once the consent decree was entered, Plaintiffs' attorneys continued to monitor the progress of SOCF to ensure the decree was carried out. In this case, it is the Plaintiffs' attorneys duty to monitor the consent decree, because such monitoring is essential to the long-term success of the law suit. In *Pennsylvania v. Delaware Valley Citizens' Council in Clean Air,* 478 U.S. 546, 559, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986), the Supreme Court stated that "post-judgment monitoring of a consent decree is compensable activity for which counsel is entitled a reasonable fee." In a school desegregation case, the Sixth Circuit similarly stated, "[s]ervices devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working to desegregate the school system, are compensable services. They are essential to the long-term success of the plaintiff's suit." *Northcross v. Board of*

*Educ. of Memphis City Schools,* 611 F.2d 624, 637 (6th Cir.1979). In the case at bar, monitoring of the decree was essential. In fact, after the riots SOCF returned to its previous policy of segregation, and the Plaintiffs once again had to demand and were successful in obtaining a desegregation agreement.

The Plaintiffs do not have to be successful on each and every issue to receive attorney's fees. Any post-judgment motions or litigation, however, must be necessary to protect the Plaintiffs' rights, and related in some manner to the initial purpose for bringing the suit. *See Glover v. Johnson,* 934 F.2d 703, 715–16 (6th Cir.1991) (holding that filing of post-judgment motions for non-compliance is a form of monitoring which is compensable under 42 U.S.C. § 1988); *Plyler v. Evatt,* 902 F.2d 273, 280 (4th Cir.1990) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)) (Where common issues of fact exist in later proceedings or related legal theories, "'the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on litigation.'"); *Turner v. Orr,* 785 F.2d 1498, 1504 (11th Cir.1986) ("Post-judgment efforts ... directed toward the protection of those rights originally vindicated by the consent judgment, and these efforts of monitoring and enforcement qualify the [plaintiff] as a 'prevailing party' ... for expenses reasonably incurred in these efforts regardless of the outcome of each individual post-judgment effort involving litigation."). In this case, all of the attorney's efforts were directed towards carrying out the desegregation, and, therefore, related to the original action. Accordingly, Plaintiffs are entitled to attorney's fees for their post-judgment efforts to enforce the consent decree.

C. No Evidence of Duplication of Attorney's Hours Exists.

■ Next, the Defendants contend some of the Plaintiffs hours are duplicative because two attorneys worked on the case and attended some of the hearings together. This alone, however, does not indicate that the

hours are duplicative. Many cases are staffed by two or more attorneys, especially class actions. The hours in this instance appear completely reasonable, and, in fact, it appears that the Plaintiffs have not requested re-imbursement for 73.4 hours they worked between the consent decree and the SOCF riot. Since the Plaintiffs appear to have made a fair and honest request and duplication does not appear from the record, this Court finds no reason to reduce attorney's fees. Reducing attorney's fees on the Defendants' best guess as to duplication is simply not appropriate. Therefore, without some sort of evidence of duplication reduction is not appropriate.

### D. Attorney Costs to Secure Fees are Recoverable.

■ Defendants also contend that the Plaintiffs should not be given fees for filing and proceeding with this motion. The Sixth Circuit has held otherwise, "[w]e conclude that implementation of Congressional policy requires the awarding of attorney's fees for time spent pursuing attorney's fees in the cases presently under review." *Weisenberger v. Huecker,* 593 F.2d 49, 54 (6th Cir. 1979). The Sixth Circuit stated that the purpose of the act was to shift the costs of "litigation to those who infringe upon basic civil rights." *Id.* Therefore, the party should be able to secure those fees without incurring additional costs. If the Defendants choose to force a successful Plaintiff into court to obtain those costs, then the Defendant should pay the Plaintiffs' costs of seeking the attorney fees section 1988 mandates. Accordingly, Plaintiffs are entitled to attorney fees for their current motion.

### E. A Reasonable Attorney's Fee is Determined by the Current Market Rate.

■ The Plaintiffs request $175 per hour for Mr. Laufman and $185 per hour for Mr. Gerhardstein. They state that these are their current hourly rates and are reasonable within the community, and this evidence was not contested by the Defendants. In *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court held that district courts should award reasonable attorney's fees according to the current market rates in the relevant community. *Id.* at 894, 104 S.Ct. at 1546–47; *see also, Northcross,* 611 F.2d at 638 (holding that the district court should look at a fair market value for the attorney's services to determine a reasonable hourly rate). Recently, in *James v. Runyon,* No. C–1–91–905, slip op. at 5 (S.D. Ohio June 16, 1994), Judge Beckwith found that $175 per hour was a reasonable fee for Mr. Laufman. Judge Beckwith based her findings on a 1990 *Ohio Law* article which found that the average rate of Cincinnati attorneys with 20 or more years of experience working on the Federated Department Stores Bankruptcy case was $177.50 per hour. Judge Beckwith then adjusted this according to a 4% per year living increase and found that the average rate in the Cincinnati market would be $199.66. We find Judge Beckwith's work both informative and reliable, and since the Defendants have not contested the Plaintiffs rates as unreasonable we believe that $175 per hour for Mr. Laufman and $185 per hour for Mr. Gerhardstein is an accurate measure of their current market value.

### F. To Determine the Correct Amount of Attorney's Fees a Court Must Multiply Hourly Rate by the Amount of Hours Spent on the Case.

The best method of determining attorney's fees is to multiply the reasonable hourly rate by the amount of hours provided for the case. *Northcross,* 611 F.2d at 636. The Sixth Circuit held that the best indicator of this is the affidavits of counsel. *Id.* According to the affidavits, Mr. Laufman worked 88.8 hours and Mr. Gerhardstein worked 35.2 hours between the riots and the final brief on attorney's fees. These hours are reasonable, and this Court finds no reason to eliminate any of the hours documented by the attorneys in this case.

### II. Costs and Expenses

■ The Plaintiffs request reimbursement for litigation costs, including $248.70 for copies, $32.45 for overnight shipments to an expert and $42.51 for a motel for their expert. There are two principle concepts for

awarding out-of-pocket expenses. "Some expenses are included in the concept of attorney's fees, as 'incidental and necessary expenses incurred in furnishing effective and competent representation,' and thus are authorized by section 1988." *Northcross,* 611 F.2d at 639 (quoting Congressman Drinan, 122 Cong.Rec. H12160 (daily ed. 1 Oct. 1976)). The Sixth Circuit went on to state that reasonable photocopying, travel and telephone costs, among other things, are recoverable pursuant to section 1988. *Id.* Therefore, the Plaintiffs in this instance can recover $248.70 for their copies and $32.45 for overnight shipments pursuant to section 1988.

■ Secondly, costs to be paid to a third party can be recovered according to the guidelines of 28 U.S.C. § 1821 and 28 U.S.C. § 1920. According to section 1920 a court may tax as costs "[f]ees and disbursements for printing and witnesses." 28 U.S.C. § 1920(3). Section 1821 states "[a]ll normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title." 28 U.S.C. § 1821(c)(4). Thus, the cost of retaining an expert at an overnight motel is a reasonable travel expense. We find that $42.51 is a reasonable amount, and thus include it in the total costs to the Defendants.

## Conclusion

Accordingly, we hereby GRANT Plaintiffs Motion for Attorney Fees and Costs and ORDER Defendants to pay the Plaintiffs $21,690 in attorney fees and $323.66 in costs.

SO ORDERED.